Davis v. Williams.

Filed April 15, 1892.

---

No. 464.

DAVIS *v.* WILLIAMS.

NEGLIGENCE.—*Intervening Agency.*—*Remoteness of Consequences.*—In the case of a tortious act,if some other power or force, beyond the control of the original actor, may be justly said to constitute the more direct cause, and the result following the primary cause was extraordinary, unusual or unnatural, and the consequences for which damages are claimed are

not such as might have been reasonably anticipated, the first cause is too remote to be taken as the proximate or efficient one.

SAME.—*Throwing Carcass of Dog Near Highway.*—*Frightening Horse of Traveller.*—The owner of a dead dog, who places it in a proper place, and which is, without his knowledge or consent, taken by another and placed near a highway, so that it frightens the horse of a traveller, to its and his injury, is not liable in damages to the person injured.

From the Clark Circuit Court.

*M. Z. Stannard,* for appellant.

*L. A. Douglass,* for appellee.

REINHARD, J.—On the night of April 30, 1879, as the appellee was returning in a conveyance from the city of Jeffersonville, along the public highway running through the town of Clarksville to her home in said town, her horse became frightened at the carcass of a large Newfoundland dog belonging to the appellant and lying on the side of the highway, and suddenly leaping to one side the horse fell into a ditch, turning the buggy over and throwing the appellee to the ground and severely injuring her and killing itself. For the injury to herself the appellee brought this action in the court below where, by a jury trial, she recovered damages in the sum of $200. The appellant's motion for a new trial having been overruled she appeals to this court, and urges upon our consideration, among other alleged errors, the insufficiency of the evidence.

The evidence showed that the dog died in the appellant's cellar on the night previous to that of the injury, and that, immediately after its death, the appellant's two sons carted the carcass of the animal to a place in the rear of the State's prison, known or designated as the large commons, in the city of Jeffersonville, and there placed it within an enclosure that had been used by the prison authorities as a pig pen. Later in the same night three boys, whose names it is not necessary to set out here, passed by the enclosure, discovered the carcass of the dog, and carried it away and put it upon the front doorstep of James Watson, the appel-

lant's nearest neighbor, " in order to practice a joke on Watson," as one of them testified. When at 6 o'clock the next morning Watson found the dog upon his doorstep, he threw it into the highway in front of his house. Between 7 and 9 o'clock that morning appellant was informed by Watson that he had found the carcass of his dog upon his doorstep and had thrown it in the street in front of his (Watson's) premises. Appellant being busily engaged with his work as foreman of the car works, took no steps to remove the dead animal until 5 o'clock that evening, after he had stopped his day's work. At that time he made search for the dog at the place where appellant had told him it was, but, failing to find it there, he concluded it had been buried and abandoned the search. During the day the carcass had been removed by some boys (others than those who had placed it on the appellant's doorstep) down the roadside some distance, where they dug a hole and placed the dog within it. As to the depth or size of this hole, or whether the carcass was still in the same when the accident happened, the evidence is not clear. Assuming that the dead animal was lying upon top of the ground, the evidence further discloses that about an hour before the injury the appellee, on her way to Jeffersonville, drove past the place where the dog was lying, and she testified that her horse shied at its sight, which attracted her attention, and that she then noticed it lying there. Having finished her errand in Jeffersonville, she started to return home to Clarksville, it being then about dark. When the horse came to where the dog lay it was frightened, and hence the accident first above mentioned.

This was the evidence, in substance. We are of opinion that it does not make a case against the appellant. The theory upon which the action is predicated is that of negligence, and hence before there can be any recovery there must be some evidence that the defendant, or those for whose conduct he is accountable, was guilty of some negligent act to which the injury may be directly traced. There is not the

slightest evidence of this in the case at bar. The contention of the appellee's counsel is that the placing of the dead animal in the enclosure aforesaid was the establishment of a nuisance. There is, however, no evidence from which the jury could infer that, for the time being at least, this was not a proper place for the dog to remain until it could be buried or otherwise disposed of. As the burden was upon the appellee to prove negligence she should have introduced some testimony upon this subject, at least.

But if it be conceded that the act of depositing the carcass of the animal in such a place might be taken as conclusive evidence of negligence by the jury, the liability of the appellant does not follow as a consequence.

We think the evidence very clearly shows that the act complained of was not the proximate cause of the injury. The maxim *causa proxima, et non remota spectatur,* applies with peculiar force here. It is explicitly shown, not only that there was an intervening agency which was of itself sufficient to stand as the cause of the appellee's misfortune, but that the act, even if tortious in itself, was not such as would be ordinarily, naturally, or usually calculated to lead to such a result. It cannot be said, therefore, that the appellant must have anticipated the consequences flowing from such act.

It is not every tortious act that makes the perpetrator liable in damages if injury occurs, even if such injury is, in some sense, produced or influenced by it. If in any such case some other power or force, beyond the control of the original actor, may be justly said to constitute the more direct cause, and the result following the primary cause was extraordinary, unusual, or unnatural, and the consequences for which damages are claimed were not such as might have been reasonably anticipated, the first cause will be considered too remote to be taken in law as the proximate or efficient one. We are not unmindful of the fact that it is very difficult to fix a rule that will admit of general applicability, and

Davis *v.* Williams.

that every case must in some degree be governed by its own circumstances. But this does not take away from us the duty of applying the maxim to a case clearly within its scope. Otherwise a person might be held pecuniarily liable for every remote consequence of a wrongful act, no matter how many other agencies had intervened to which might be traced more directly the evil results complained of. In this way the maxim itself would soon cease to have any efficacy or virtue whatever.

As bearing upon this question, either directly or indirectly, see the following cases : *Billman* v. *Indianapolis, etc., R. R. Co.*, 76 Ind. 166 ; *City of Crawfordsville* v. *Smith*, 79 Ind. 308 ; *Binford* v. *Johnston*, 82 Ind. 426 ; *Town of Albion* v. *Hetrick*, 90 Ind. 545 ; *Terre Haute, etc., R. R. Co.* v. *Buck*, 96 Ind. 346 ; *Bloom* v. *Franklin, etc., Ins. Co.*, 97 Ind. 478 ; *Pennsylvania Co.* v. *Whitlock*, 99 Ind. 16 ; *Kistner* v. *City of Indianapolis*, 100 Ind. 210 ; *Indianapolis, etc., R. W. Co.* v. *Pitzer*, 109 Ind. 179 ; *Alexander* v. *Town of New Castle*, 115 Ind. 51 ; *Louisville, etc., R. W. Co.* v. *Lucas*, 119 Ind. 583 ; *Clore* v. *McIntire*, 120 Ind. 262 ; *Louisville, etc., R. W. Co.* v. *Nitsche*, 126 Ind. 229.

The contention of appellee's counsel that the appellant was guilty of maintaining a nuisance is predicated upon the fallacious assumption that it became his duty, as soon as he was notified thereof, to remove the dead animal from the street, though neither he nor his sons had anything to do with placing it there. As well might it be argued that if the appellant had buried the dog and some one bent upon mischief had dug it up and placed it where the injury occurred, appellant would be liable. It is proper to state here that the complaint itself was based upon no such theory. It proceeds upon the theory that the appellant's sons placed the dog's carcass upon Watson's door step. If this were true, a different question would be presented. But the evidence utterly fails to prove any such case as that made by

the complaint, and leaves the appellee no foundation for his evidence to stand upon.

We need not determine whether the appellee was guilty of contributory negligencé in venturing to drive a second time in such close proximity to the place where the known object of her horse's fright was lying when she had been previously warned by the action of the horse that it was not altogether safe to do so.

The motion for a new trial should have been granted.

Judgment reversed.

Filed April 26, 1892.