EVANSVILLE AND TERRE HAUTE RAILWAY COMPANY *v.* WELCH.

[No. 3,188.   Filed October 5, 1900.]

DAMAGES.—*Negligence.*—*Proximate Cause.*—*Railroads.* —Where defendant negligently ran its locomotive through the streets of a town at a dangerous and unusual rate of speed and struck a person and hurled his body at and against plaintiff, who was standing on the platform of defendant's station, and injured him, such injury was not the natural and probable consequence of defendant's negligence, and plaintiff cannot recover damages therefor.

From the Sullivan Circuit Court.   *Reversed.*

*J. E. Iglehart, Edwin Taylor,* and *J. T. Hays,* for appellant.

*John S. Bays,* for appellee.

HENLEY, J.—The appellant by proper assignment of error questions the ruling of the lower court in holding

appellee's complaint good against a demurrer for want of sufficient facts. The facts stated in the complaint are substantially the following: That the town of Farmersburg is incorporated and has about 1,000 inhabitants, and is provided with streets, sidewalks, and alleys; that appellant has and maintains a depot and station in said town which is located near the central part of said town at the west side of appellant's track and immediately along the side thereof; that the south end of said station abuts on the main street in said town, which street is called Liston street; and that the platform of said station runs along the east side and the entire length thereof; that said street runs east and west through the entire length of said town and crosses appellant's track just east of the south end of said station; and that appellant's track runs north and south through said town, and that running parallel with said track through said town is a certain side-track or switch; that there are a large number of buildings in said town on both sides of said appellant's track and along the line of said Liston street and at and near appellant's said station; and that at all times of day large numbers of persons pass to and from the east and west portions of said town along said street and across appellant's said tracks, and large numbers of persons congregate at and on the platform of appellant's said station for the purpose of taking passage on appellant's passenger train number two, especially just before the incoming of appellant's said passenger train, which facts the appellant well knew. In order to make said crossing safe for persons passing along said street, it was necessary that appellant keep the view along said tracks unobstructed and free from all things calculated to obstruct the view, so that persons crossing said tracks at said street could see the approach of locomotives and cars; and that if said side-track had cars located thereon it was necessary to insure the safety of passengers that the locomotives should be run at a low rate of speed when crossing said street; that on the 12th of Jan-

uary, 1898, one William Bostic, a resident of said town who resided on the east side of said railroad track·and along the line of said Liston street, left his home for the purpose of going to the station of said appellant for the purpose of taking passage on its said passenger train number two, which was due to arrive from the south at 10:30 a. m.; that after said Bostic left his home, he proceeded west on said Liston street to where said street crossed the railroad track, side-track, etc.; that at the time the said Bostic approached the said tracks for the purpose of crossing them, there was and had been a long time prior thereto a large number of flat cars and box cars carelessly and negligently placed on said side-track, which said cars completely obstructed the view from the south of one who was passing along the line of said street, making said crossing dangerous at said point if an engine or train of cars propelled by an engine was run at a great or unusual rate of speed, all of which facts were well known to appellant; that, by reason of said obstructions, it was dangerous to all persons on or about said station platform and to persons attempting to cross said track if an engine should be run with great and unusual speed by and past said point and over and across said street at or near the time when said passenger train number two would be due at said station, all of which facts appellant well knew; that while said Bostic was on the opposite side of the track in the act of crossing said track, and just before said passenger train was due to arrive at said station, a locomotive known as a "wild engine", in charge of the agents and employes of appellant and running upon the time of train number two and at the time said train number two should arrive at said station, was run upon and across and over appellant's track and through said town, and was by appellant's servants and agents carelessly and negligently run at a dangerous, reckless, and unusual rate of speed along, across, and over appellant's main track where the same crossed Liston street, to the great danger of all persons who might be attempting

to cross said track at said time, all of which facts were well known to the appellant. Said William Bostic was attempting to cross said street toward the west and to approach said station for the purpose of taking passage on appellant's train when said "wild engine," running as aforesaid, suddenly, carelessly, and negligently ran upon and against the said Bostic, killing him instantly and hurling his body at and against appellee, who was then and there standing upon the platform of appellant's said station, with such force that appellee, without any fault or negligence on his part, was knocked down, bruised, mangled, and crippled, for which injury he demands judgment in the sum of $5,000. It is further averred in the complaint that at the time appellee was so struck as aforesaid, he was in company with a large number of persons standing upon the platform of the station of appellant with the knowledge and consent of the appellant; that he resides in said town and is engaged in the livery business therein, and that in connection with his said business he attends the incoming of all appellant's trains at said station for the purpose of soliciting customers who may arrive on said trains; all of which he does with the knowledge and consent of appellant, and all of which facts appellant well knew.

The above strange and unusual facts are relied upon by appellee as showing actionable negligence upon the part of appellant proximately causing appellee's damage. Was appellee's injury the natural and probable consequence of the negligence charged to appellant, and was his injury such as might or ought to have been foreseen in the light of the attending circumstances?

In the case of *Davis* v. *Williams*, 4 Ind. App. 487, the court said: "It is not every tortious act that makes the perpetrator liable in damages if injury occurs, even if such injury is, in some sense, produced or influenced by it. If in any such case some other power or force, beyond the control of the original actor, may be justly said to constitute the

more direct cause, and the result following the primary cause was extraordinary, unusual, or unnatural, and the consequences for which damages are claimed were not such as might have been reasonably anticipated, the first cause will be considered too remote to be taken in law as the proximate or efficient one."

It is possible that persons may be injured in the manner in which appellee received his injury. Sufficient proof of this is the fact that appellee was so injured. But such an injury can not be said to be one which the most prudent man would have anticipated. The manner in which appellee was injured was unusual and extraordinary and contrary to common experience. It was such an injury as could not have been foreseen or reasonably anticipated as the probable result of appellant's negligent acts. Under such circumstances there is no liability. *Richards* v. *Rough,* 53 Mich. 212, 18 N. W. 785; *Hoag* v. *Lake Shore, etc., R. Co.,* 85 Pa. St. 293; *Sjogren* v. *Hall,* 53 Mich. 274, 18 N. W. 812; *Mitchell* v. *Chicago, etc., R. Co.,* 51 Mich. 236, 16 N. W. 388; *Wabash, etc., R. Co.* v. *Locke,* 112 Ind. 404, 2 Am. St. 193; *City of Allegheny* v. *Zimmerman,* 95 Pa. St. 287; *Stewart* v. *Strong,* 20 Ind. App. 44.

Our Supreme Court, in the case of *Wabash, etc., R. Co.* v. *Locke, supra,* say: "Mischief, which could by no reasonable possibility have been foreseen, and which no reasonable person would have anticipated, can not be taken into account as a basis upon which to predicate a wrong."

It is said in Pollock on Torts, 36: "Now a reasonable man can be guided only by a reasonable estimate of probabilities. If men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order

his precaution by the measure of what appears likely in the known course of things."

Taking the facts as stated in the complaint, it does not appear and it cannot reasonably be inferred that appellant failed to observe such precautions for appellee's safety as were reasonable and prudent under the circumstances.

In the case of *Wood* v. *Pennsylvania R. Co.,* 177 Pa. St. 306, 35 Atl. 699, 35 L. R. A. 199, it is said: "Again, the competent railroad engineer knows, from his own experience and that of others in like employment, that to approach a grade highway crossing with a rapidly moving train without warning is dangerous to the lives and limbs of the public using the crossing; he knows death and injury are the probable consequences of his neglect of duty, therefore he gives warning. But does any one believe the natural and probable consequence of standing fifty feet from a crossing, to the one side of a railroad, when a train is approaching, either with or without warning, is death or injury? Do not the most prudent, as well as the public generally, all over the land, do just this thing every day, without fear of danger? The crowded platforms and grounds of railroad stations, generally located at crossings, alongside of approaching, departing, and swiftly passing trains, prove that the public, from experience and observation, do not, in that situation, foresee any danger from trains. They are there, because, in their judgment, although it is possible a train may strike an object, animate or inanimate, on the track, and hurl it against them, such a consequence is so highly improbable that it suggests no sense of danger; they feel as secure as if in their homes; to them it is no more probable than that a train at that point will jump the track and run over them. If such a consequence as here resulted was not natural, probable, or foreseeable to anybody else, should defendant, under the rule laid down in *Hoag* v. *Lake Shore, etc., R. Co.,* 85 Pa. St. 293, be chargeable with the consequence? Clearly it was not the natural and probable consequence of its neglect to give warning, and therefore was

not one which it was bound to foresee.  The injury, at most, was remotely possible, as distinguished from the natural and probable consequence of the neglect to give warning.  As is said in *Railroad Co.* v. *Trich,* 117 Pa. St. 390, 11 Atl. 627, 'Responsibility does not extend to every consequence which may possibly result from negligence.'  What we have said thus far is on the assumption that the accident was caused solely by the negligence of defendant, or by the concurring negligence of defendant and the one killed going upon the track with a locomotive in full view.  This being an action by an innocent third person, he can not be deprived of his remedy because his injury resulted from the concurrent negligence of two others.  He fails because his injury was a consequence so remote that defendant could not reasonably foresee it."

We think the supreme court of Pennsylvania, in the above quoted case, correctly stated the law upon facts not materially different from the case at bar.  It was error to overrule the demurrer to the complaint.

Judgment reversed, with instructions to the lower court to sustain appellant's demurrer to appellee's complaint.