# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**_Zokhrabov v. Park_, 2011 IL App (1st) 102672**

---

| | |
|---|---|
| Appellate Court Caption | GAYANE ZOKHRABOV, Plaintiff-Appellant, v. JEUNG-HEE PARK, Special Administrator of the Estate of Hiroyuki Joho, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-10-2672 |
| Filed | December 23, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where a commuter was struck and killed at a train station when he crossed the tracks in front of an oncoming train and his body was flung 100 feet to a platform where it struck and injured plaintiff, the trial court erred in entering summary judgment for the administrator of the commuter's estate in plaintiff's action for her injuries based on the holding that the commuter owed no duty of care to plaintiff, since under a traditional duty analysis, it was reasonably foreseeable that the train would strike the commuter and fling his body down the tracks to where it would strike plaintiff, and all the commuter had to do was pause, look down the tracks, and cross the tracks accordingly. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-07584; the Hon. Thomas P. Quinn, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Robert J. Rooth, of Rooth Law Firm P.C., and Leslie J. Rosen, both of Chicago, for appellant.

Robert K. Scott and Matthew R. Bloom, both of Scott, Halsted & Babetch, P.C., of Chicago, for appellee.

Panel

JUSTICE McBRIDE delivered the judgment of the court, with opinion.

Presiding Justice Quinn and Presiding Justice R. Gordon concurred in the judgment and opinion.

## OPINION

¶ 1      Hiroyuki Joho was killed when he was struck by an Amtrak train at the Edgebrook Metra station at Lehigh and Devon Avenues in Chicago. Joho's accident occurred just before 8 a.m. on Saturday, September 13, 2008, when the 18-year-old man was crossing in a designated crosswalk from the eastside passenger platform where Metra commuter trains arrive from Chicago, to the westside passenger platform where Metra commuter trains depart toward Chicago. Joho was about five minutes early for the next scheduled Metra departure to Chicago. The sky was overcast and it was raining heavily as he proceeded west across the double set of tracks, holding an open, black umbrella over his head and a computer bag on a strap across his shoulder. The Metra station was not a destination for the Amtrak train that was traveling south at 73 miles an hour, and the engineer in the bright blue locomotive maintained speed, but sounded a whistle which triggered automatic flashing headlamps. Witnesses, nonetheless, disagreed as to whether Joho realized the train was approaching. He was smiling at the commuters standing on the southbound platform when the train hit him. A large part of his body was propelled about 100 feet onto the southbound platform where it struck 58-year-old Gayane Zokhrabov from behind, knocking her to the ground. She sustained a shoulder injury, a leg fracture, and a wrist fracture.

¶ 2      Zokhrabov sued Joho's estate in the circuit court of Cook County seeking damages on the ground that his negligence caused her injuries. She alleged he owed a duty of care to her while walking in and around the Metra station and breached that duty when he: "(a) carelessly and negligently failed to keep a proper lookout for approaching trains; (b) carelessly and negligently ran in the path of an approaching [Amtrak] train; or (c) carelessly and negligently failed to yield the right-of-way to approaching trains." Joho's mother, Jeung-Hee Park, defended her son's estate. When Zokhrabov motioned for partial summary judgment as to proximate causation, Park cross-motioned for summary judgment on the ground that her son owed no actionable duty to Zokhrabov, and the court ruled in Park's favor. Zokhrabov appeals. She contends the trial court recognized the governing principles of law, but failed to apply them correctly.

¶ 3    The entry of summary judgment is addressed *de novo* on appeal. *Vega v. Northeast Illinois Regional Commuter R.R. Corp.*, 371 Ill. App. 3d 572, 577, 863 N.E.2d 733, 737 (2007). Summary judgment should be granted when the pleadings, deposition transcripts, admissions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Vega*, 371 Ill. App. 3d at 577, 863 N.E.2d at 737 (quoting 735 ILCS 5/2-1005(c) (West 2000)). To prevail on a negligence claim, a plaintiff must establish that the defendant owed a duty of care to the plaintiff, the defendant breached this duty, and the plaintiff incurred injury proximately caused by the breach. *Vega*, 371 Ill. App. 3d at 577, 863 N.E.2d at 737. Thus, if there is no duty to the plaintiff, the defendant cannot be found liable for negligence. *Vega*, 371 Ill. App. 3d at 577, 863 N.E.2d at 737; *Tesar v. Anderson*, 2010 WI App 116, ¶ 5 n.7, 789 N.W.2d 351 ("No duty, no negligence. Breach, cause and damage immaterial."). The existence of a duty is a question of law, which a court may appropriately resolve in a summary judgment proceeding. *Vega*, 371 Ill. App. 3d at 577, 863 N.E.2d at 737.

¶ 4    It is axiomatic that pedestrians on or near active train tracks are at great risk of suffering severe, even fatal, injuries. This court recently held that the personal danger posed by stepping in front of a moving train is an open and obvious danger. *Park v. Northeast Illinois Regional Commuter R.R. Corp.*, 2011 IL App (1st) 101283, ¶ 19. The law generally assumes that persons who encounter obvious, inherently dangerous conditions will take care to avoid the danger. *Park*, 2011 IL App (1st) 101283, ¶ 19. " 'The open and obvious nature of the condition itself gives caution ***; people are expected to appreciate and avoid obvious risks.' " *Park*, 2011 IL App. (1st) 101283, ¶ 17 (quoting *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 448, 665 N.E.2d 826 (1996)). When a railroad employee in charge of a moving train gives the usual and proper signals that the train is approaching, the employee is generally not required to slacken speed or stop the train absent circumstances indicating people will not or cannot get out of harm's way. See *Higgins v. Baltimore & Ohio R.R. Co.*, 16 Ill. App. 2d 227, 231, 147 N.E.2d 714 (1958) (rejecting rule that "a train must make an emergency stop every time a pedestrian is seen on or near the tracks"); *Maxwell v. Illinois Central Gulf R.R.*, 513 So. 2d 901, 905 (Miss. 1987) (if a trespasser on the tracks is an adult and apparently in possession of his faculties, the engineer is entitled to expect the person to hear the warning signals and remove himself from danger; the speed of the train need not be slackened until circumstances indicate the person will probably not seek safety in time).

¶ 5    Numerous cases indicate that death or great bodily harm is the likely outcome of failing to exercise due care when walking on or near active train tracks. See, *e.g.*, *Chiriboga v. National R.R. Passenger Corp.*, No. 08-C-7293 (N.D. Ill. Oct. 7, 2011) (pedestrian attempting to cross tracks via pedestrian crosswalk in order to meet scheduled Metra train at Edgebrook station was struck and killed by onrushing Amtrak train); *Eskew v. Burlington Northern & Santa Fe Ry. Co.*, 2011 IL App (1st) 093450 (pedestrian attempting to cross in designated crosswalk from one passenger platform to the other at Metra's Berwyn station was struck and killed by the arriving train); *McDonald v. Northeast Illinois Regional Commuter R.R. Corp.*, 2011 IL App (1st) 102766 (pedestrian in crosswalk at Metra's North Glenview Station was struck and seriously injured by Metra train that was running express through the station); *Graves v. Northfolk Southern Ry. Co.*, No. 2:09-CV-401, 2011 WL

2146757 (N.D. Ind. May 21, 2011) (pedestrian at 169th Street station in Hobart, Indiana, ran across street and one set of tracks in order to beat oncoming train, and then had to dive across second set of tracks to avoid being hit by second train); *Shaffer v. CSX Transportation Co.*, No. 3:09-CV-2068, 2010 WL 4923098 (N.D. Ohio Nov. 29, 2010) (where one intoxicated trespasser looked over his shoulder, became aware of train, and stepped outside of tracks, but second intoxicated trespasser continued to walk inside the rails, first trespasser returned and reached out to pull his companion to safety, and both men were struck and killed); *Weaver v. Conrail, Inc.*, No. 09-5592, 2010 WL 2773382 (E.D. Pa. July 13, 2010) (when impatient pedestrian started to cross between two cars of what seemed to be a standing train, the train lurched forward, knocked her to the ground, ran over one leg, and instantly amputated her lower leg and caused substantial soft tissue damage to her thigh and hip). See also *Calhoun v. CSX Transportation, Inc.*, 331 S.W.3d 236 (Ky. 2011) (car driver crossing single set of tracks in Bullitt County, Kentucky, was unaware of oncoming train, train struck the vehicle's rear quarter panel, she was ejected and suffered serious injuries).

¶ 6    In addition to these cases indicating that active trains pose an open and obvious danger to pedestrians, there is an Illinois statute regarding pedestrian rights and duties which states: "No pedestrian shall enter, remain upon or traverse over a railroad grade crossing or pedestrian walkway crossing a railroad track when an audible bell or clearly visible electric or mechanical signal device is operational giving warning of the presence, approach, passage, or departure of a railroad train [or railroad track equipment]." 625 ILCS 5/11-1011(c) (West 2006). Breach of a statute enacted to protect human life or property, which is the obvious purpose of this statute, is an indication that a person has acted with less than reasonable care. *Feldscher v. E&B, Inc.*, 95 Ill. 2d 360, 370, 447 N.E.2d 1331, 1336 (1983) (a statute enacted to protect human life or property is relevant to whether the defendant acted with less than reasonable care; however, the statute does not create a duty of care to the plaintiff where none existed or indicate the defendant's conduct proximately caused the plaintiff's injury).

¶ 7    Thus, the precedent and statute indicate that Joho failed to act with due regard for his own safety and self-preservation. The record indicates the Amtrak engineer triggered an audible warning whistle and flashing headlamps before proceeding through the Edgebrook Metra station. Even if Joho mistook the Amtrak train which was not stopping at the station for the Metra train which he intended to board, the record indicates he failed to exercise reasonable care for his own safety when he failed to look down the train tracks before attempting to cross the tracks in front of an approaching train. The question we must answer is whether Joho owed a duty of care to Zokhrabov as he approached and entered the active Edgebrook station and she stood down the tracks in the waiting area designated for intended passengers.

¶ 8    Ordinarily, a person engaging in conduct that creates risks to others has a duty to exercise reasonable care to avoid causing them physical harm. Restatement (Third) of Torts § 6, cmt. b (2010); *Karas v. Strevell*, 227 Ill. 2d 440, 451, 884 N.E.2d 122 (2008) ("every person owes a duty of ordinary care to guard against injuries to others"). The general rule is that one must act as would a prudent and reasonable person under the circumstances. Restatement (Third) of Torts § 7, Reporter's Note, at 85 (2010) (and cases cited therein); *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 86, 199 N.E.2d 769, 779 (1964) ("every person owes to all others

a duty to exercise ordinary care to guard against injury which naturally flows as a reasonably probable and foreseeable consequence of his act, and *** such duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons").

> "One justification for imposing liability for negligent conduct that causes physical harm is corrective justice; imposing liability remedies an injustice done by the defendant to the plaintiff. An actor who permits conduct to impose a risk of physical harm on others that exceeds the burden the actor would bear in avoiding the risk impermissibly ranks personal interests ahead of others. This, in turn, violates an ethical norm of equal consideration when imposing risks on others. Imposing liability remedies this violation.
>
> Another justification for imposing liability for negligence is to give actors appropriate incentives to engage in safe conduct. The actor's adoption of appropriate precautions improves social welfare and thereby advances broad economic goals." Restatement (Third) of Torts § 6, cmt. d (2010).

¶ 9 Therefore, when determining whether a duty of care exists in a particular set of circumstances, an Illinois court will consider, among other factors, the reasonable foreseeability that the defendant's conduct may injure another. *Colonial Inn Motor Lodge, Inc. v. Gay*, 288 Ill. App. 3d 32, 40, 680 N.E.2d 407, 413 (1997). The court's other considerations in a duty analysis include the reasonable likelihood of an injury, the magnitude of the burden imposed by guarding against the harm, and the consequences of placing this burden on the defendant. *Colonial Inn*, 288 Ill. App. 3d at 40, 680 N.E.2d at 413.

¶ 10 It is a "well-established principle of tort law that the particular manner or method by which a plaintiff is injured is irrelevant to a determination of the [defendant's] liability for negligence." *Nelson v. Commonwealth Edison Co.*, 124 Ill. App. 3d 655, 660, 465 N.E.2d 513, 517 (1984). The existence of a duty depends on whether there was a potential for initial contact with and thus an injury to the plaintiff, meaning that the plaintiff was a foreseeable plaintiff. *Colonial Inn*, 288 Ill. App. 3d at 42, 680 N.E.2d at 414 ("Focusing on the potential for injury rather than on the specifics of the harm that did occur, we find the duty problem is relatively simple."). "It is generally accepted that where the plaintiff's injury resulted from the same physical forces whose existence required the exercise of greater care than was displayed and were of the same general sort expectable, unforeseeability of the exact developments and of the extent of loss will not limit liability." *Nelson*, 124 Ill. App. 3d at 661, 465 N.E.2d at 518. "For example, if a ship owner fails to clean petroleum out of his oil barge moored at a dock, he has created an undue risk of harm through fire or explosion. The fact that a fire is ignited by the unusual event of lightning striking the barge does not relieve the ship owner from liability to foreseeable plaintiffs who are injured." *Nelson*, 124 Ill. App. 3d at 661, 465 N.E.2d at 618. Thus, a foreseeable injury, even through unforeseen means, is actionable. However, in a duty analysis, we must take care to differentiate between "two distinct problems in negligence theory," the first being the foreseeable injury resulting from unforeseen means, which is an actionable injury, and the second being the unforeseen plaintiff, who is not owed a duty of care. *Nelson*, 124 Ill. App. 3d at 660, 465 N.E.2d at 517.

¶ 11 Furthermore, while the foreseeability of injury to the particular plaintiff is properly

considered in a duty analysis, the foreseeability of the particular injury or damages are more appropriately considered in determining the factual issue of proximate causation (*Colonial Inn*, 288 Ill. App. 3d at 40-41, 680 N.E.2d at 413), and we must differentiate between these two circumstances in order to properly apply the "foreseeability" test (*Nelson*, 124 Ill. App. 3d at 662, 465 N.E.2d at 519). In this case, the trial judge concluded it was not reasonably foreseeable and was instead tragically bizarre that when Joho crossed in front of the oncoming Amtrak train in Edgebrook he would be struck and thrown 100 feet to where Zokhrabov stood on the Metra customer platform.

¶ 12    The trial judge based his conclusions on *Cunis v. Brennan*, 56 Ill. 2d 372, 308 N.E.2d 617 (1974), which involved a two-car collision in suburban La Grange, Illinois, in which a passenger was ejected and thrown 30 feet to the public parkway, where his leg was impaled on an abandoned municipal drain pipe, necessitating amputation of the limb. *Cunis*, 56 Ill. 2d at 373, 308 N.E.2d at 618. The passenger alleged the municipality was negligent in leaving the broken drain there. *Cunis*, 56 Ill. 2d at 374, 308 N.E.2d at 618. The likelihood that the collision would cause the passenger to be ejected and propelled 30 feet to the exact location of a broken pipe that was 4.5 feet from one curb and 5.5 feet from the other, and then impaled, seemed very remote and led the trial and supreme courts to conclude that the circumstances were "tragically bizarre" and possibly even a "unique" outcome. *Cunis*, 56 Ill. 2d at 377, 308 N.E.2d at 620. The fact that the "misplaced drain pipe would cause *any* injury to someone riding in a car 30 feet away was an example of ' "the freakish and the fantastic," ' " for which the village was not liable. (Emphasis in original.) *Colonial Inn*, 288 Ill. App. 3d at 42, 680 N.E.2d at 680 (quoting *Cunis*, 56 Ill. 2d at 376, 308 N.E.2d at 619 (quoting William Prosser, *Palsgraf Revisted*, 52 Mich. L. Rev. 1, 27 (1953))). The passenger's injury would appear to involve many variables, including the speed and weight of the two vehicles, the angle of their collision, the weather conditions, the extent and direction of any evasive maneuvers, and the passenger's height, weight, and position within the vehicle, as well as whether he was wearing a seatbelt. The supreme court affirmed the trial judge's ruling that the injured passenger had not alleged what occurred was reasonably foreseeable and therefore a basis for holding the Village of La Grange liable for negligently breaching its duty of care. *Cunis*, 56 Ill. 2d at 378, 308 N.E.2d at 620. Thus, *Cunis* may be cited generally for the proposition that there is no duty to anticipate and prevent injuries that occur due to unusual and extraordinary circumstances. We do not find *Cunis* helpful here, however. The two-car collision, ejectment, and impalement in La Grange bear little similarity to the train-pedestrian collision in Edgebrook that caused a third, unconnected person to be struck and injured. In contrast to the complex and unique combination of factors in La Grange, the potential outcome of Joho's conduct in Edgebrook appears to be relatively limited, since the path of the train was fixed, the pedestrian crosswalk was marked, the train ran within the established speed limit, its speed, weight, and force grossly exceeded any pedestrian's, and commuters were congregating to the side of the train tracks for the next scheduled public departure. *Cunis* does not inform us about the factual circumstances in Edgebrook–it does not indicate that what occurred at the train station was such an unusual and extraordinary combination of facts that Joho could not reasonably foresee the potential for causing injury to the waiting passengers when he decided to cross the tracks. *Cunis* does

not suggest that what occurred in Edgebrook was similarly "freakish" "fantastic" or tragically bizarre. *Cunis*, 56 Ill. 2d 372, 308 N.E.2d 617.

¶ 13    There are no reported cases we have found in which a pedestrian who was struck and injured by a flying body sued the deceased person's estate. There are a few cases in which a pedestrian was struck by a train or car and flung into another person. In these cases, however, the injured person sued the railroad or automobile driver. We do not find these opinions particularly helpful because they concern the alleged negligent operation of a rail yard or a train or other vehicle, which is not analogous to Joho's alleged negligence as a pedestrian traversing train tracks.

¶ 14    Examples include *Evansville & T.H.R. Co. v. Welch*, 58 N.E. 88, 88 (Ind. Ct. App. 1900), in which a railroad allegedly left box and flat cars sitting on side tracks very close to an intersection in a small town in Indiana, completely obstructing sight of the main tracks, and making it dangerous for pedestrians to cross. The railroad was sued for the careless and negligent placement of its cars, as well as allowing a fast-moving and unscheduled " 'wild engine' " to barrel through the intersection just before the scheduled arrival of a passenger train. *Welch,* 58 N.E. at 89. A man intending to catch the passenger train stepped into the path of the unscheduled locomotive and was struck, killed, and flung into a man standing on the passenger platform, who suffered considerable personal injuries. *Welch,* 58 N.E. at 89. The court's analysis of the railroad's duty of care to the man standing in its designated waiting area does not help us address Joho's duty of care to Zokhrabov. The railroad's decisions about the storage and use of its railcars and whether it should have foreseen the resulting injury to the waiting man are not comparable to Joho's alleged careless and negligent act of stepping into the path of a clearly visible and audible moving train and whether he should have foreseen the resulting injury to Zokhrabov.

¶ 15    Similarly, in *Wood v. Pennsylvania R. Co.*, 35 A. 699, 700 (Pa. 1896), a Philadelphia railroad was sued because it failed to sound warning bells or whistles as its evening express train came into a passenger station at 50 to 60 miles an hour. However, even without an audible signal, intended passengers on the platform and in the waiting room were aware of the train's approach, because they heard its rumble or saw its headlights, and witnesses testified that the train was visible when it was still 150 to 200 yards out. *Wood*, 35 A. at 701. Two women who, therefore, also apparently saw and heard the incoming train tried to cross the tracks in front of it. *Wood*, 35 A. at 700. The first woman cleared the tracks in time but the second woman was struck, killed, and flung into a man standing on the passenger platform and the man was injured. *Wood*, 35 A. at 700. There was no indication that the railroad's failure to use an audible signal caused or contributed to the man's injury on the platform. *Wood*, 35 A. at 701. The court concluded that the second woman's negligence alone was the legal cause of the incident and that the injured man's claim against the railroad was properly nonsuited by the trial judge. *Wood*, 35 A. at 701. The court's discussion of the railroad's lack of liability to the man who waited on the trackside platform is inapplicable here.

¶ 16    It was alleged in *Farr v. Chicago & Eastern Illinois R.R. Co.*, 8 Ill. App. 2d 168, 131 N.E.2d 120 (1955), that a postal employee suffered crippling injuries at the commuter station in Momence, Illinois, because, without sufficient warning, a 12-car express train sped

through the station as passengers were congregating for the next departure, an elderly customer who was making her way slowly across the double tracks was struck and killed by the express, and her body was flung toward the passenger platform into the postal employee, propelling him into his heavy iron mail cart. *Farr*, 8 Ill. App. 2d at 173, 131 N.E.2d at 123. Thus, *Farr* involved two pedestrians and a fast moving train, but its similarities with the present case end there. The injured postal employee sued the railroad, not the elderly pedestrian or her estate. *Farr*, 8 Ill. App. 2d 168, 131 N.E.2d 120. His allegations of negligence concerned the speed of the train as it passed through the station, particularly when passengers were congregating for a scheduled departure, and that the warnings were inadequate (*Farr*, 8 Ill. App. 2d at 171-72, 131 N.E.2d at 122), in contrast to the allegations here that Joho was a careless pedestrian in an active train station who acted without due regard for his own safety and the safety of his fellow commuters. In *Farr*, the court had no reason to consider whether the elderly pedestrian, that is, Joho's counterpart, could reasonably foresee the outcome of her decision to step into the path of the fast-moving, yet highly visible and audible express. The appellant asked the court to analyze the postal employee's contributory negligence and the adequacy of his proof of proximate causation. *Farr*, 8 Ill. App. 2d 168, 131 N.E.2d 120. Therefore, the court never spoke to whether a pedestrian in an active train station owes a duty of care to another pedestrian.

¶ 17    We have also considered *Dahlstrom v. Shrum*, 84 A.2d 289 (Pa. 1951), in which a car driver testified that he chose to pass a bus that had stopped to let out passengers, even though it was so dark he could not tell what type of vehicle he was overtaking and he then became partially blinded by the glare of its headlamps as he approached, went around the bus, and entered the intersection. Two passengers had alighted from the bus and were attempting to cross the road. The car struck the first pedestrian, and the first pedestrian's body was flung into the second pedestrian. We cannot say that the driver's decisions and the late-night collision on the quiet Pennsylvania road are comparable to Joho's conduct in Edgebrook and the injuries that he caused on the Metra passenger platform.

¶ 18    Thus, there are a few reported cases involving flying pedestrians, but none of them are analogous to Joho's conduct with respect to Zokhrabov.

¶ 19    Accordingly, rather than relying on cases which are factually and procedurally dissimilar, we apply a traditional duty analysis to determine whether Zokhrabov was a foreseeable plaintiff and thus owed a duty of care. *Colonial Inn*, 288 Ill. App. 3d at 41-42, 680 N.E.2d at 414 (a duty of care exists if there was a potential for initial contact with and thus an injury to the plaintiff, meaning that the plaintiff was a foreseeable plaintiff; "[f]ocusing on the potential for injury rather than on the specifics of the harm that did occur [makes a duty analysis] relatively simple").

¶ 20    At the outset of this opinion, we cited cases regarding pedestrians struck by trains and a statute regarding pedestrian rights and safety as indicators that Joho acted without due regard for his own person and self-preservation in the active train station. We reiterate that the potential outcome of his conduct appears to be relatively limited, since the path of the train was fixed, the pedestrian crosswalk was marked, the train ran within the established speed limit, its speed, weight, and force grossly exceeded any pedestrian's, and commuters were congregating to the side of the train tracks for the next scheduled public departure.

Accordingly, we further find that it was reasonably foreseeable that the onrushing Amtrak train would strike, kill, and fling his body down the tracks and onto the passenger platform where Zokhrabov was waiting for the next scheduled Metra departure. We find that the trial court erred in concluding that Joho could not reasonably foresee that his negligence in the active train station would cause injury to someone standing in the passenger waiting area.

¶ 21       Continuing with the four elements of a duty analysis, we find that the reasonable likelihood of injury occurring was great given the relative force of the approaching Amtrak train, that the magnitude of the burden imposed by guarding against the harm was insignificant, since Joho needed only to pause, look down the tracks, and then time his crossing accordingly, and that the consequences of placing the burden on Joho would have been minimal.

¶ 22       We, therefore, find that the trial judge erred in holding that the defendant owed the plaintiff no duty of care. We reverse the entry of summary judgment as to duty and remand Zokhrabov's case for further proceedings. We express no opinion regarding the additional elements of her negligence action, including breach, proximate causation, and damages, which are issues usually decided by a jury. *Belton v. Forest Preserve District of Cook County*, 407 Ill. App. 3d 409, 414, 943 N.E.2d 221, 226 (2011).

¶ 23       Reversed and remanded.