COLONIAL INN MOTOR LODGE, INC., for the Use and Benefit of the Cincinnati Insurance Company, Plaintiff-Appellant, v. GREG GAY, Defendant-Appellee (Stash O'Neil's/Hard Times, Inc., Defendant; Joanne Lubrano *et al.*, Plaintiffs; Colonial Inn Motor Lodge, Defendant and Third-Party Plaintiff and Third-Party Defendant; and Greg Gay, Defendant and Third-Party Defendant and Third-Party Plaintiff).

Second District    No. 2—96—0316

Opinion filed April 3, 1997.—Rehearing denied June 16, 1997.

34

Brad A. Elward, of Heyl, Royster, Voelker & Allen, P.C., of Peoria, for appellant.

Robert H. Clark and Todd A. Ramlow, both of Donohue & Clark, Ltd., of Rockford, for appellee.

PRESIDING JUSTICE GEIGER delivered the opinion of the court:

The plaintiff, Colonial Inn Motor Lodge, Inc., on behalf of its insurance carrier, the Cincinnati Insurance Company, sued Greg Gay (the defendant) and Stash O'Neil's/Hard Times, Inc. (Stash O'Neil's),

in case No. 93—L—73 for damages from an explosion the defendant allegedly caused by driving into the plaintiff's building, the Colonial Inn. The plaintiff sued the defendant in negligence and sought recovery against Stash O'Neil's under the Dramshop Act (235 ILCS 5/6—21 (West 1994)). In case No. 94—L—394, Antonio and Joanne Lubrano sued the plaintiff and the defendant to recover for injuries from the explosion. The plaintiff and the defendant sued each other for contribution toward any damages awarded the Lubranos. The cases were consolidated for discovery purposes only.

The plaintiff appeals (see 155 Ill. 2d R. 304(a)) a grant of summary judgment (see 735 ILCS 5/2—1005(c) (West 1994)) for the defendant in case No. 93—L—73. The plaintiff argues that the defendant owed it a duty of care and that whether the defendant's negligence caused the plaintiff's damages is a jury issue. We agree. Therefore, we reverse and remand for further proceedings.

Count I of the plaintiff's second amended complaint alleges the following. The Colonial Inn was a "hotel/motel" at 4850 East State Street in Rockford. On October 30, 1992, the defendant caused a vehicle he was driving to come into contact with the building. The defendant was negligent in: (a) failing to keep a proper lookout; (b) failing to apply his brakes so as to avoid striking the building; and (c) driving his vehicle into the building. As a result, the building caught fire and exploded, causing the plaintiff property damage and lost income. The Cincinnati Insurance Company paid the plaintiff under an insurance policy, and the plaintiff was suing on the insurer's behalf.

The Lubranos' first amended complaint sought recovery in negligence against both the plaintiff and the defendant. Its allegations against the defendant essentially paralleled those in count I of the plaintiff's complaint, asserting that his negligent driving caused the contact that led to the explosion. Neither the plaintiff's complaint nor the Lubranos' complaint asserted that the defendant breached any duty to inspect the accident scene, inform anyone of the contact, or warn of any resultant danger.

The defendant moved for summary judgment on both the plaintiff's complaint and the Lubranos' complaint insofar as each applied to him. The defendant argued that, because the explosion was not a reasonably foreseeable consequence of the slight contact his car made with the building, he did not owe the plaintiff a duty. For the same reason, he maintained, his conduct could not be considered the proximate cause of the calamity. The defendant relied on excerpts from the deposition testimony of himself, Leann Johnson, and Michael Woodring.

The defendant's motion referred to yet another negligence suit

that arose from his accident, *viz.*, a 1992 action by Stash O'Neil's against the defendant and Frank Gay, d/b/a Frank Gay's Marquee. There, the complaint as amended alleged that the accident occurred after the defendant exited Stash O'Neil's and got into his car behind the restaurant. Stash O'Neil's asserted both that the defendant was negligent in causing the initial contact with the Colonial Inn air-conditioning or heating unit and that he breached a duty to stop immediately and locate the owner of the damaged property. The complaint alleged that had the defendant fulfilled this duty to warn, he would have discovered that he had severed certain gas lines. The complaint also alleged that the explosion and the fire that followed from the ignition caused the fire department to close Stash O'Neil's, resulting in lost business. The circuit court dismissed Stash O'Neil's suit for failure to state a cause of action (see 735 ILCS 5/2—615(a) (West 1992)).

The plaintiff's response to the defendant's summary judgment motion relied in part on the arguments the Lubranos made in their response to the defendant's motion. The plaintiff also made use of (and attached) an excerpt from Woodring's deposition testimony. We summarize the relevant deposition testimony.

The defendant testified that he was backing his car up in the parking lot immediately before the contact. Before he started to back up, he looked into the rearview mirror and saw only the brick building. The defendant drove no faster than two miles per hour. When he felt a bump, he activated his brakes and again looked into the rearview mirror, seeing only the brick building and not any air-conditioning or heating unit protruding therefrom. The defendant figured he had caused no damage, so he stayed in his car and exited the parking lot. The car suffered very little damage. Later that evening, the police told the defendant of the explosion.

Leann Johnson testified that, on October 30, 1992, she was an employee of Stash O'Neil's, which is located at 4846 East State Street in Rockford. Some time that afternoon, her friend Robert Reed drove her there so she could get her paycheck. Reed parked the car in Stash O'Neil's lot. As Johnson walked south toward Stash O'Neil's, she heard something that sounded like "someone hitting something." Johnson turned in the direction of the sound and saw the defendant's car near the west wall of a building. Johnson did not see the collision itself.

Johnson testified that she was not sure how far from the defendant's car she was when she heard the collision. (Diagrams that Johnson marked are not in the record on appeal.) Johnson also equivocated on how loudly the defendant's car collided with the air-

conditioning or heating unit. Although she described the sound as a "bang," she conceded that earlier she accurately said that " 'it wasn't very loud, but it was loud enough that we heard it good.' " The defendant's vehicle was stationary for a short time and drove off. At some point after she heard the collision, Johnson saw a dent in the "air-conditioning thing, the little thing that's hanging outside," this unit being about 12 to 15 inches high and perhaps 20 inches wide. Johnson did not recall how big or deep the dent was or exactly where it was on the face of the unit. Johnson never saw the unit move, never saw anything fall away from the unit, and observed no damage to the defendant's car. She entered Stash O'Neil's to get her check and left roughly 15 minutes after she heard the collision. She did not see the explosion.

Michael Woodring, a fire investigator for the City of Rockford, gave his opinion of what caused the explosion. Woodring believed that, because the air-conditioning or heating unit protruded from the wall and apparently overhung the lot, it could be hit by a car that stayed within the parking lot—as, to the best of Woodring's knowledge, the defendant's car did. The collision caused a break in the gas line, which in turn made gas collect and flow until it made contact with an ignition source. Woodring explained that normally some time passes between breakage to a gas line and a resultant fire. Here, the ignition source could have been the pilot light on one of the large dryers in the hotel's laundry room. According to a deposition excerpt the plaintiff attached to its response to the summary judgment motion, Woodring opined that the gas accumulated in room 101 of the hotel, escaped, and eventually made contact with the ignition source, a pilot light in the hotel basement's washer/dryer system.

The trial court granted the defendant's motion. The court's letter opinion defined the pivotal issue as "whether or not there was a duty on the part of Defendant Gay to do something which he subsequently failed to do. The duty which is expressed is one to warn Colonial Inn or someone of the possible damage of an explosion which subsequently occurred." The letter opinion then stated that, because the defendant had been driving very slowly and the impact was slight, it was impossible to say whether any damage would have been visible to the exterior of the air-conditioning/heating unit he struck. Also, because the unit was so low off the ground, the defendant was unaware even that he struck it. Thus, the court reasoned, the danger of a gas explosion involving (as yet unknown) collection and ignition points was not reasonably foreseeable and the defendant was entitled to summary judgment.

The plaintiff moved to reconsider. Relying in large measure on

Leann Johnson's deposition testimony, the plaintiff argued that, given the force of the contact (as shown by the sound it made and the dent that it left), the resultant harm was reasonably foreseeable. Therefore, the defendant owed the plaintiff a duty to exit his car, look for damage, and tell one of the plaintiff's agents what had happened. The plaintiff argued that, had the defendant inspected the scene, he would have noticed the damage and realized he needed to alert the plaintiff.

At the hearing on the motion to reconsider, the plaintiff's lawyer stated that counsel had finally managed to contact Robert Reed and had sent Reed an affidavit that Reed signed and returned but did not get notarized. Counsel requested that the court consider the Reed affidavit and stated he would get it notarized. The defendant's counsel received a copy of the affidavit and said he had not seen it before. However, after the plaintiff's attorney requested "mov[ing] forward with argument right now," the defendant's attorney said he had "no objection to proceeding with argument, and we can consider those facts with the understanding that there is an original affidavit somewhere that will be notarized and—and submitted to the court record."

Argument commenced. The plaintiff's attorney asserted that Reed's affidavit tended to show that the explosion was a reasonably foreseeable consequence of the collision. The trial judge interjected that he did not have a copy of the affidavit. The plaintiff's counsel quoted from the affidavit and completed his argument, urging that the defendant breached his duties "to not hit other people's property" and to notify someone of the collision. Counsel continued that there was a genuine issue of fact whether the defendant's conduct proximately caused the explosion.

After further argument, the trial judge stated that the arguments here were essentially those raised before the original ruling. The court denied the motion to reconsider and stated there was no just reason to delay the enforcement or appeal of its order (see 155 Ill. 2d R. 304(a)). The plaintiff timely appealed.

On appeal, the plaintiff argues that (1) the court erred in concluding the defendant owed no duty to the plaintiff and (2) whether the defendant's conduct proximately caused the explosion cannot be decided as a matter of law. Both arguments hinge on the plaintiff's assertion that the trial court misapplied the concept of "reasonable foreseeability" that underlies both duty and proximate cause. The defendant responds that he is entitled to summary judgment on either ground because the explosion was not a reasonably foreseeable consequence of his conduct.

■ Before delving into the merits, we address whether to consider the affidavit of Robert Reed in deciding whether summary judgment was proper. We decline to do so. Although the record is admittedly less than clear, it shows that the plaintiff did not even proffer Reed's affidavit until after it moved to reconsider the grant of summary judgment. When the plaintiff sought to rely in part on Reed's affidavit, the court had not yet been presented with a copy; from the transcript of the hearing on the motion to reconsider, we conclude that the judge did not have the affidavit before him when he heard arguments. Moreover, the affidavit had not yet been notarized. It appears from the judge's explanation of his decision that he did not consider the Reed affidavit. Under all the circumstances, we decline to consider evidence which was not in proper form, was not submitted and could not have been considered until after the grant of summary judgment, and appears not to have been before the trial judge. See *Rayner Covering Systems, Inc. v. Danvers Farmers Elevator Co.*, 226 Ill. App. 3d 507, 510-11 (1992) (party may not expect trial court to consider evidence not introduced until motion to reconsider summary judgment). In any event, we do not believe our holding would differ significantly were we to factor in the Reed affidavit.

■ Whether the court erred in granting summary judgment is a question of law that we review *de novo*. *In re Estate of Hoover*, 155 Ill. 2d 402, 410-11 (1993). Summary judgment is proper if the pleadings, depositions, and other matters on file show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1994). A court should not grant summary judgment unless the movant's right to it is clear and free from doubt, and the court must construe the evidence strictly against the movant and liberally in favor of the nonmovant. *Colvin v. Hobart Brothers*, 156 Ill. 2d 166, 170 (1993). The nonmovant need not prove his case at this stage, but he must present some factual basis that would arguably entitle him to judgment. *Smith v. Tri-R Vending*, 249 Ill. App. 3d 654, 657 (1993).

■ In a negligence action, the plaintiff must plead and prove (1) the existence of a duty owed by the defendant to the plaintiff; (2) the breach of that duty; and (3) an injury proximately caused by that breach. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 45 (1991); *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140 (1990). Here, the parties dispute whether there is a genuine factual issue as to both the first element, duty, and the third element, proximate cause.

We consider the duty issue first. The parties and the trial court appear to have intermingled two possible duties or breaches thereof—(1) the defendant's duty to drive safely to avoid colliding with the

building and (2) the defendant's alleged duty to warn or inform the plaintiff after the collision. However, we shall consider only the first of these possible duties because nothing in the plaintiff's complaint alleges that the defendant had a duty to warn or inform the plaintiff of the accident. The only duty alleged in that complaint, or in the Lubranos' complaint as it relates to the defendant, is the defendant's duty to use due care to avoid the collision. As far as we can tell from the record, the plaintiff waited until its motion to reconsider the judgment to assert that there was any duty to warn. (It appears the only time before the judgment that a party here even obliquely mentioned a possible duty to warn was when *the defendant's* motion for summary judgment attached a copy of Stash O'Neil's' complaint, which does assert that the defendant owed such a duty to the plaintiff.)

■ The plaintiff never properly pleaded the existence of a duty to warn. The defendant could not contest the existence of this duty by way of his motion for summary judgment. The plaintiff may not recover under a theory never set forth in its complaint, for, as we have stated, proof without pleadings is as defective as pleadings without proof. *Estate of Welliver v. Alberts*, 278 Ill. App. 3d 1028, 1040 (1996). Thus, we consider whether the defendant had a duty to avoid the collision but not whether he had any duty to inform the plaintiff afterward. We conclude that the defendant owed the plaintiff a duty of due care to avoid the initial contact.

■ The existence of a duty is a question of law and depends on whether the defendant and the plaintiff stood in such a relationship that the defendant is obliged to conform to a certain standard of conduct for the benefit of the plaintiff. *Ziemba*, 142 Ill. 2d at 47; *Widlowski v. Durkee Foods*, 138 Ill. 2d 369, 373 (1990). To decide whether a duty exists in a particular case, a court considers the foreseeability that the defendant's conduct may injure another, the likelihood of an injury resulting, the burden to the defendant of imposing a duty, and the consequences of imposing this burden. *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 452-53 (1992).

■ In finding that the defendant did not owe the plaintiff a duty, the trial court relied on its conclusion that the explosion was not a reasonably foreseeable consequence of the contact between the car and the building. Although reasonable foreseeability is an important consideration in the duty equation, we believe that the trial court erred by using as its touchstone the foreseeability of *the particular injury or damages* rather than the foreseeability of *an* injury to the *particular plaintiff*. We believe the latter is crucial to the legal determination of duty, while the former is more appropriately considered

in determining the factual issue of proximate causation. True, the case law is less than perfectly lucid or consistent in its treatment of the densely intertwined ideas of duty, proximate causation, and reasonable foreseeability. However, it appears that, because duty is based on the relationship of the plaintiff and the defendant, that relationship, and not the type of injury that resulted, is crucial.

Illinois courts have on the whole supported this view. Although "reasonable foreseeability" is crucial to both duty and proximate cause, courts must take care to keep duty and proximate cause analytically independent by differentiating between "two distinct problems in negligence theory—the unforeseen plaintiff problem and the problem of the foreseeable injury resulting from unforeseen means." *Nelson v. Commonwealth Edison Co.*, 124 Ill. App. 3d 655, 660 (1984). This approach is consistent with the long-standing principle that the particular manner or method by which the plaintiff is injured is generally not germane to the determination of the existence of a duty. See *Nelson*, 124 Ill. App. 3d at 660-63 (and cases cited therein). The general standards we have recited focus on the preaccident relationship between the parties and the foreseeability of an injury to the particular plaintiff, not on the foreseeability of the actual injury or the specific means by which it was brought about. This is true even where courts have declined to impose a duty because certain "freakish" or "fantastic" injuries could not reasonably have been foreseen. In each case, what was "unforeseeable" was not merely the particular injury, but the initial contact—the *fact* of injury to *the particular plaintiff*.

Thus, in *Cunis v. Brennan*, 56 Ill. 2d 372 (1974), the plaintiff, a passenger in a car, was injured when a collision with another car threw him 30 feet onto a parkway, where he was impaled on part of a drain pipe allegedly left there as a result of the defendant municipality's negligence. The supreme court held that the municipality owed the plaintiff no duty of due care. Emphasizing the importance of analyzing the parties' relationship (*Cunis*, 56 Ill. 2d at 374), the court concluded that it was not reasonably foreseeable the alleged negligence should have brought about the plaintiff's injury. Although the court observed that the particular injury was not reasonably foreseeable, it also stressed that the initial contact—and thus any injury to the particular plaintiff from the protruding drain pipe— was "tragically bizarre." *Cunis*, 56 Ill. 2d at 377. The "remote possibility of the occurrence" did not give rise to a duty from the municipality to the plaintiff. *Cunis*, 56 Ill. 2d at 377-78.

*Cunis* did not present a situation where the particular plaintiff or his initial contact with the defendant was reasonably foreseeable but

the ultimate injury or damages were arguably not so. Rather, that the misplaced drain pipe would cause *any* injury to someone riding in a car 30 feet away was an example of " 'the freakish and the fantastic.' " *Cunis*, 56 Ill. 2d at 378, quoting W. Prosser, *Palsgraf Revisited*, 52 Mich. L. Rev. 1, 27 (1953).

In *Widlowski*, the plaintiff, a nurse, alleged that the defendant's employee was made delirious by nitrogen gas to which he was exposed on the job; as a result, he was transported to the hospital, where his delirium caused him to bite off the plaintiff's finger. Refusing to find that the employer owed the plaintiff a duty, the supreme court explained that it could not say that "the risk of harm to [the] plaintiff, who was removed in time and place, was reasonably foreseeable." *Widlowski*, 138 Ill. 2d at 374. The court also explained that the likelihood of the initial harmful contact (the bite) was small and that the burden of guarding against such an occurrence was great because the employee could have harmed anyone with whom he came into contact while he was delirious. *Widlowski*, 138 Ill. 2d at 374-75.

In *Ziemba*, the plaintiff was riding a bicycle on a road when he was hit by a truck exiting the defendant's driveway. The supreme court refused to find that the defendant owed the plaintiff a duty to keep his driveway from being obscured by foliage. Emphasizing the importance of the relationship between the parties in its duty inquiry (*Ziemba*, 142 Ill. 2d at 48), the court explained that it was not reasonably foreseeable that the alleged breach of duty would result in "this type of accident" (*Ziemba*, 142 Ill. 2d at 49). The court noted further that the obscured driveway posed a danger *to the plaintiff* only because of the truck driver's intervening negligent act. *Ziemba*, 142 Ill. 2d at 49-50. Thus, *Ziemba* is consistent with the rule that there is no duty when the *plaintiff* is not reasonably foreseeable.

Cases from other jurisdictions the defendant cites also demonstrate that, where "unforeseeability" bars the imposition of a duty, both the particular injury *and* the particular plaintiff (*i.e.*, the initial contact with the plaintiff) are "unforeseeable." See *Diamond State Tel. Co. v. Atlantic Refining Co.*, 205 F.2d 402 (3d Cir. 1953); *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928); *Radigan v. W.J. Halloran Co.*, 97 R.I. 122, 196 A.2d 160 (1963).

■ We believe that the relationship of the parties here was such that the law could require the defendant to exercise due care on behalf of the plaintiff. Focusing on the potential for injury rather than on the specifics of the harm that did occur, we find the duty problem is relatively simple. The defendant was a motorist operating his vehicle in the vicinity of the plaintiff's building. He had an obligation to use due care to avoid driving his car into the building. The

building was not remote in time or space from the defendant (apparently it was all too close); the collision itself was a simple result of the defendant's action and had no intervening causes like the independent negligent acts of the motorists in *Cunis* or *Ziemba*; and the specific types of duty the complaint alleges—to keep a proper lookout, to apply brakes when necessary, and generally to take care to avoid an accident—are anything but unusual.

This is not a case involving an unforeseeable plaintiff, and we find no policy considerations that would negate the ordinary and routine duty of a motorist to drive his car carefully so as not to cause other parties injury or property damage. The court erred in holding that the defendant owed the plaintiff no duty. Whether the unusual facts here absolve the defendant of liability is something we now address under the rubric of proximate cause.

The plaintiff argues that proximate cause is a jury question because there is a genuine issue of whether the damage to the building was the natural and probable consequence of the defendant's careless driving. The plaintiff maintains that there is at least some evidence that the defendant's car struck the air-conditioning or heating unit with great force. Thus, the plaintiff asserts, the explosion was not inherently unforeseeable and proximate cause should not be decided as a matter of law. The defendant responds that the explosion was too bizarre to be a natural and probable consequence of slowly backing a car into the building. We conclude that the evidence on the issue is not so one-sided that it entitles the defendant to summary judgment.

■ Whether an injury proximately resulted from the defendant's breach of a duty is ordinarily a question of fact. *Lee*, 152 Ill. 2d at 454; *Ward*, 136 Ill. 2d at 156-57. Proximate cause consists of (1) cause in fact—whether there is a reasonable certainty that the defendant's actions caused the injury—and (2) legal cause—whether the injury was of a type that was a reasonably foreseeable result of the defendant's conduct. *Lee*, 152 Ill. 2d at 455-56; *Yager v. Illinois Bell Telephone Co.*, 281 Ill. App. 3d 903, 909 (1996). We agree with the plaintiff that the expert testimony of the fire investigator and the fact of the collision itself provide an evidentiary basis for cause in fact. The more difficult issue is whether the plaintiff set forth a sufficient factual basis that the injury was reasonably foreseeable. We believe it did so.

■ We cannot say as a matter of law that it was not reasonably foreseeable that a collision between an automobile and the side of a building could cause the sort of injury here. Construing the evidence liberally in favor of the plaintiff, we see some basis to conclude that

the impact was substantial. The sound made a person some distance off shift her attention toward the defendant. Moreover, even a slow-moving car is a large instrumentality capable of causing significant harm. The possibility that colliding with a building will disrupt a gas line or create a fire hazard is not so inherently farfetched as to merit the label "freakish" or "fantastic." Gas lines and ignition sources such as appliances are common features of buildings, including large buildings used for residential purposes. Importantly, this case does not involve the intervention of an unforeseeable third party as an intervening or additional cause. It is at least fairly arguable that, once the defendant's car hit the plaintiff's building, the sequence of events that caused the explosion was set in motion with no further action needed to bring about the injury.

Illinois courts are reluctant to deny liability where an injury is merely indirect or surprising, even if an actor other than the defendant helps to bring about the accident. Thus, in *Davis v. Marathon Oil Co.*, 64 Ill. 2d 380 (1976), the court upheld a verdict for the plaintiff, who was injured by a gasoline explosion at the defendant's service station. The plaintiff, who was on the property to deliver gasoline, alleged that the defendant's negligent storage of the gasoline caused an explosion that occurred when the plaintiff exited the sales area, saw that gasoline he had pumped was flowing onto the ground, and was injured by the explosion as he tried to shut off his truck's pump. The supreme court held that the jury could conclude the negligent storage of the gasoline proximately caused the plaintiff's injury even though the explosion also required the presence, in the sales area, of a space heater that ignited the fumes when a breeze blew them into the structure as the plaintiff opened the door. *Davis*, 64 Ill. 2d at 395-96.

In *Bak v. Burlington Northern, Inc.*, 93 Ill. App. 3d 269 (1981), this court reversed summary judgment for the defendant on one count of a complaint that alleged that the plaintiff's decedent's death from an overdose of a painkilling drug was proximately caused by the defendant's negligent maintenance of its staircase. The plaintiff alleged that the defendant's negligence caused the plaintiff's decedent serious injuries, without which she would not have been taking the drug at all. Nine months passed between the accident and the decedent's overdose. This court held that the passage of time and the decedent's act of taking the overdose did not mean that, as a matter of law, the defendant's negligence did not proximately cause her death. *Bak*, 93 Ill. App. 3d at 271-72.

In *Mangan v. F.C. Pilgrim & Co.*, 32 Ill. App. 3d 563 (1975), the jury found that the defendant landlord's negligent upkeep of its

apartment building proximately caused injuries to the plaintiff, a tenant who fell and was injured when a mouse jumped out of her oven. The appellate court affirmed, explaining that the landlord could reasonably foresee that the unexpected presence of mice on the property could startle the plaintiff into having her accident. *Mangan*, 32 Ill. App. 3d at 570.

As these cases illustrate, a "natural and probable" consequence need not be "easily predictable" or "highly probable." Neither a high degree of contingency nor a substantial lapse of time between the negligent act and the injury establishes as a matter of law that the former did not proximately cause the latter.

If the defendant's conduct is a substantial factor in bringing about the injury, it is not necessary that the extent of the harm or the exact manner in which it occurred could reasonably have been foreseen. *Blue v. St. Clair Country Club*, 7 Ill. 2d 359, 364 (1955); *Jefferson v. City of Chicago*, 269 Ill. App. 3d 672, 676 (1995); *Mangan*, 32 Ill. App. 3d at 570; Restatement (Second) of Torts § 435(1) (1965). A negligence defendant must take the plaintiff as he finds him, even if the plaintiff's "eggshell skull" results in his suffering an injury that ordinarily would not be reasonably foreseeable. W. Keeton, Prosser & Keeton on Torts § 43, at 291-92 (5th ed. 1984). Here, the evidence suggests that a building rather than a person may have had an "eggshell skull." That possibility alone does not foreclose liability for the injury.

The judgment of the circuit court of Winnebago County is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

INGLIS and HUTCHINSON, JJ., concur.