In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3728

MAURICE COBIGE, personally
and as special representative of
the estate of Patricia Cobige,

*Plaintiff-Appellee*,

*v.*

CITY OF CHICAGO, ILLINOIS, *et al.*,

*Defendants-Appellants*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 3807—**Amy J. St. Eve**, *Judge*.

ARGUED JUNE 7, 2011—DECIDED JULY 12, 2011

Before EASTERBROOK, *Chief Judge*, and BAUER and
WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. While in a police lockup,
Patricia Cobige died of a heart arrhythmia. She was
arrested on June 10, 2006, and pronounced dead at
about 1:30 A.M. on June 12. Evidence from one of
Cobige's cellmates, plus two deputy sheriffs and a

civilian aide at the lockup, permitted a jury to find that she experienced severe abdominal pain throughout her confinement. Dan J. Fintel, Professor of Medicine at Northwestern University and head of coronary care at its hospitals, testified that the pain led Cobige to produce more epinephrine (also known as adrenaline), which combined with a pre-existing heart condition (ventricular hypertrophy) caused her death. Uterine tumors found during a post-mortem examination led Dr. Fintel to conclude that Cobige indeed had suffered serious abdominal pain; Peter Santucci, the medical expert for the defendants, agreed. Dr. Fintel thought that routine tests and care would have prevented Cobige's death had she been taken to an emergency room. Yet Cobige never received any medical attention after her arrest. A jury found that four police officers violated both state law and the federal Constitution by allowing Cobige to suffer untreated pain; the award is $5,000,000 in compensatory and $4,000 in punitive damages to Maurice Cobige, who sued as Patricia's son and special representative of her estate. The City of Chicago will indemnify the officers, and on this appeal we use "Chicago" or "defendants" to refer to the City plus the four officers.

The police officers who ignored Cobige's pleas for help did not want her to die, but they are responsible for that death nonetheless if the untreated pain caused it. This is an application of the "eggshell skull" rule: A tortfeasor takes his victim as he finds him, and if a special vulnerability (a thin skull, or here a ventricular hypertrophy) leads to an unusually large loss, the wrong-

doer is fully liable. See *Colonial Inn Motor Lodge ex rel. Cincinnati Insurance Co. v. Gay*, 288 Ill. App. 3d 32, 45, 680 N.E.2d 407, 416 (1997); *Prosser & Keeton on Torts* §43 (5th ed. 1984). The state-law claim, under the Illinois Wrongful Death Act, 740 ILCS 180/1 to 180/2.1, requires only proof of negligence. The federal-law claim, under 42 U.S.C. §1983, requires proof of intentional wrong-doing or deliberate indifference to a serious medical need, see *Farmer v. Brennan*, 511 U.S. 825 (1994), but defendants do not contend that the evidence on that issue was deficient. The jury was entitled to conclude that multiple people told the four officers about Cobige's pain, and that each of the four turned a deaf ear—indeed, that one of them, Rene Dimalanta, directed Cobige not to tell sheriff's deputies about her pain when she was taken to the courthouse for a bond hearing, and that, if she did anyway, Dimalanta would see to it that she did not receive any medical care. Cobige did complain, the deputies deemed her too ill to be presented in court, and Dimalanta then carried through with this threat.

Chicago's principal appellate argument is that the proof does not establish causation. Dr. Fintel explained that epinephrine from pain is capable of causing death for only a brief time after each episode. Chicago maintains that Cobige died while sleeping peacefully; this is incompatible with Dr. Fintel's theory and requires judgment for the defense as a matter of law, Chicago concludes.

But the testimony on which this argument depends comes from police officers who denied that Cobige had

*ever* been in pain. The jury was entitled to disbelieve them and to credit the testimony of Cobige's cellmate that the attacks of abdominal pain were frequent and becoming worse, and to infer that she had another episode of abdominal pain shortly before she died. So the district judge observed when denying Chicago's post-judgment motions. See 752 F. Supp. 2d 860, 869–70 (N.D. Ill. 2010). Moreover, the fact that Cobige was silent during the four hours before paramedics pronounced her dead need not mean that she was sleeping. A reasonable jury could have concluded that she was silent because she was dead. (The jurors were entitled to find that she was silent during those four hours; they were not required to believe one guard's testimony that Cobige was heard snoring after midnight of June 12.)

Chicago contends that there was another problem with Dr. Fintel's evidence: the judge allowed him to testify that a person with Cobige's symptoms should have been taken to a hospital. How could Dr. Fintel know this?, Chicago asks. He is not a specialist in police procedures. That's true enough, but the extent of his knowledge about how stationhouse lockups handle medical needs affects the weight rather than the admissibility of his testimony. Evidence is relevant whenever it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Police procedures unknown to Dr. Fintel may affect the *speed* of a response, but the *need* for one is a subject within his medical expertise. Stationhouse personnel have

other duties that may take precedence, see *Portis v. Chicago*, 613 F.3d 702 (7th Cir. 2010), and police are entitled to weed out fakers, but these and other considerations that affect timing can be addressed by defense witnesses. None of Chicago's witnesses disputed Dr. Fintel on this point, however; the defense was that Cobige never said that she was in pain and never appeared to be in distress.

Some evidence in the record implies that the police themselves agree with Dr. Fintel's view that a person suffering abdominal pain needs swift medical care. A placard on the wall of the lockup told the guards that any prisoner claiming to experience abdominal pain should be taken to a hospital immediately. Chicago asked the judge to exclude this chart on the ground that the jury might interpret it as a legal requirement, rather than an exercise of caution and concern for prisoners. Again this is a subject on which the lawyers can present arguments to the jurors; it does not justify exclusion—certainly not when the defense was at the same time trying to block the plaintiff's expert from testifying about the subject. The judge was not required to keep the jury in the dark about the question whether the police department shares Dr. Fintel's assessment of how the guards should have behaved.

Chicago's other arguments do not require discussion—except for those that concern evidence of Cobige's drug addiction and legal problems. These bear on damages.

Maurice Cobige, who was 27 when his mother died, testified that she had been a friend as well as a parent, a

bulwark of support and a role model throughout his life. This testimony potentially affected not only the damages recoverable by Maurice for loss of companionship but also the damages for Cobige's loss of the enjoyment of life. (Maurice did not seek damages for Patricia's lost earnings; she had not supported him financially as an adult.) Chicago wanted to undermine Maurice's rosy view of the mother-son relationship by introducing evidence that Patricia was a drug addict who had been in trouble with the law for much of her adult life and had spent multi-year stretches in prison. The district court admitted evidence that Cobige had been convicted once but excluded older sentences and did not permit the introduction of evidence about Cobige's drug addiction and arrest record.

Thus the jury did not learn that in 1998 Cobige was sentenced to four years' imprisonment for two drug offenses and had scarcely been released when she was arrested again and convicted in 2001 for another drug crime, for which the sentence was three years. When she died in 2006, she was in the lockup following arrest on yet another drug charge. The excluded evidence would have undermined the favorable picture that Maurice Cobige painted of his mother's character and would have allowed defense counsel to ask just what kind of "role model" she could have been. Moreover, evidence that she was in prison for extended periods, and in thrall to heroin when not imprisoned, would have undermined testimony that she provided wise advice and support to her son: prisoners can't spend nearly as much time with their relatives as free persons do. Although a parent's advice (and object example) not to

repeat the parent's mistakes may be valuable, this is not the kind of value that leads to an award of damages in a wrongful-death action.

The district court cited Fed. R. Evid. 404(b) and 609 when excluding Cobige's police record, time in prison, and drug addiction, and again relied on these rules when denying Chicago's post-trial motion. 752 F. Supp. 2d at 877–78. Rule 609(b) says that convictions that occurred more than ten years before the date of trial ordinarily may not be used "for the purpose of attacking the character for truthfulness of a witness". That rule has no bearing on this case. Patricia Cobige did not testify (this is a wrongful-death action, after all), and Chicago did not attempt to contest her character for truthfulness. As for Rule 404(b): This begins by saying that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Chicago did not offer the evidence about imprisonment, arrests, and addiction to show that Cobige acted "in conformity therewith" on a different occasion. That is, Chicago did not propose to use evidence of one crime to establish propensity to commit another. It proffered the evidence because it is relevant to how much loss Cobige's estate and son suffered by her death.

Cobige's character and life prospects were put in question by her son's testimony. Just as Maurice Cobige was entitled to paint a favorable view of his mother's ability to give sage advice and emotional support—he testified that "she taught me mostly everything I know. Everything she knew she tried to instill in me."—Chicago

was entitled to introduce evidence suggesting that Patricia Cobige was not likely to assist others or to have enjoyed life to the extent that her son narrated. Illinois law makes surviving relatives' emotional loss and familial ties relevant to damages. See, e.g., *Pleasance v. Chicago*, 396 Ill. App. 3d 821, 827–28, 920 N.E.2d 572, 578 (2009). The district judge should not have forbidden evidence that would have helped defendants counter Maurice's presentation.

Rule 403, which permits a judge to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice," does not justify exclusion of this evidence. The effect that Chicago sought would not have been "unfair prejudice"; the evidence bore directly on the appropriate amount of damages. When the law makes damages depend on matters such as the emotional tie between mother and son, the defendant is entitled to show that the decedent's character flaws undermined the quality of advice and support that she could have supplied. This kind of effect is not "prejudice" at all—not unless we count as "prejudice" all evidence that undermines the other side's contentions, see *Thompson v. Chicago*, 472 F.3d 444, 456 (7th Cir. 2006)—let alone "unfair prejudice". Defendants preserved their position on this subject by trying multiple times to have this evidence admitted, even after the pretrial ruling in limine that forbade its use; the district court did not find a procedural default, and we reject Maurice's contention that the absence of a formal offer of proof at trial is conclusive against the defendants. See Fed. R. Evid. 103(a) (no need to renew an offer of proof after a definitive pretrial ruling).

The district court's error in excluding evidence that could have significantly reduced the award of damages cannot be called harmless. Defendants are entitled to a new trial. But because the exclusion did not affect the jury's consideration of the merits—not if the jurors followed their instructions, anyway, and we do not have any reason to doubt that they did—the new trial should be limited to the subject of damages. See *Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494 (1931) (new trial limited to damages is proper when liability and remedy present distinct issues).

The district court should take care to avoid recurrence of a problem that cropped up in the first trial. The jury's verdict is ambiguous. It awarded $3 million in compensatory damages on one count of the complaint and $2 million on another. It is possible that the jury meant these to be added, as the judge did, for a total of $5 million, but it is also possible that the jury meant them to be alternative awards, with only the greater to be enforced. The verdict form used in this case was not as opaque as the one in *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293, 310–14 (7th Cir. 2010), but it was far from ideal and should be improved for the next trial. *Thomas* offers some help for that endeavor.

The judgment is affirmed to the extent it establishes the police officers' liability but is vacated to the extent that it assesses damages. The case is remanded for a new trial limited to damages.