NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DALLAS FISK,
*Plaintiff/Appellant,*

*v.*

HURRICANE AMT LLC, et al.,
*Defendants/Appellees.*

No. 1 CA-CV 17-0256
FILED 7-5-2018

Appeal from the Superior Court in Maricopa County
No.  CV2013-014929
The Honorable Randall H. Warner, Judge

**AFFIRMED**

COUNSEL

Law Offices of Luis P. Guerra, LLC, Phoenix
By Luis P. Guerra
*Co-Counsel for Plaintiff/Appellant*

Ahwatukee Legal Office, PC, Phoenix
By David L. Abney
*Co-Counsel for Plaintiff/Appellant*

The Moulton Law Firm, PC, Scottsdale
By Kathleen M. Kassmann, Timothy L. Moulton
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Paul J. McMurdie and Judge David D. Weinzweig joined.

---

J O H N S E N, Judge:

¶1　　　　In this wrongful-death action, Dallas Fisk appeals the superior court's grant of judgment to Hurricane AMT LLC ("Franchisor") and the jury's verdict in favor of Category 5 LLC dba Hurricane Grill and Wings ("Hurricane Grill").  For the reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2　　　　Fisk was driving his wife Lindsey home just before midnight after an evening of shopping and other errands.  As he turned left from westbound Bell Road onto southbound 83rd Avenue, a sport-utility vehicle coming the opposite direction on Bell plowed into the passenger side of his car, killing Lindsey.

¶3　　　　The driver of the sport-utility vehicle, Holly Kast, stumbled out of her car after the accident and staggered and fell when she tried to walk.  Kast smelled strongly of alcohol, had droopy, bloodshot eyes, slurred her speech, and was disoriented and incoherent.  She failed a field-sobriety test, and a blood test later showed she had .284 blood-alcohol content.  Police arrested Kast and the State charged her with manslaughter and other offenses.

¶4　　　　Kast told police that she drank three beers and two shots of liquor at Hurricane Grill before the accident, and police found a receipt in her purse confirming those purchases.  According to Kast, she was not drunk when she arrived at Hurricane Grill earlier that evening, but she admitted she was drunk by the time she and her companion left there shortly before the accident.

¶5　　　　The bartender at Hurricane Grill who served Kast testified Kast did not seem intoxicated at any time that evening.  The bartender did not know how many drinks she served Kast that night.  Hurricane Grill's manager testified that when she visited Kast's table, Kast was alert and not visibly intoxicated.

¶6            Fisk sued Hurricane Grill and Franchisor (collectively, "Hurricane"), for causing Lindsey's death and his own personal injuries, alleging, *inter alia*, that Hurricane overserved Kast and negligently trained and supervised its alcohol-serving staff.  Other members of Lindsey's family joined as plaintiffs in the wrongful-death claim.  Before trial, however, each of the plaintiffs except Fisk accepted Hurricane's offers of judgment.

¶7            Hurricane designated Kast as a nonparty-at-fault.  At trial, after Fisk rested, the superior court granted judgment as a matter of law to Franchisor, and the jury ultimately issued a verdict in favor of Hurricane Grill.  Because Fisk had declined Hurricane's $50,000 offer of judgment and was awarded nothing at trial, the court granted sanctions of more than $191,000 to Hurricane pursuant to Arizona Rule of Civil Procedure 68.

¶8            The superior court denied Fisk's motion for a new trial, and Fisk timely appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2018) and -2101(A)(5)(a) (2018).[1]

## DISCUSSION

¶9            On appeal, Fisk argues he is entitled to a new trial because of several purported errors by the superior court.

## A.     Failure to Strike Jurors.

¶10           Fisk first argues that the superior court erred by denying his motion to strike two prospective jurors for cause, requiring him to use peremptory challenges to remove the jurors.  But in *State v. Hickman*, 205 Ariz. 192 (2003), our supreme court held that even if a court erroneously fails to remove a juror for cause, reversal is not warranted unless the party claiming error shows prejudice beyond the mere fact that the party had to use a peremptory challenge to remove that juror.  Because Fisk used peremptory challenges to remove the allegedly objectionable jurors and he alleges no other prejudice, *Hickman* controls.  Because Fisk shows no prejudice from the claimed error, we need not determine whether the court erred by declining to remove the jurors.

---

[1]      Absent material revision after the relevant date, we cite the current version of a statute or rule.

## B.      Exclusion of the Judgment in Favor of the Other Plaintiffs.

¶11      Fisk next argues the superior court erred by excluding evidence of the judgment entered against Hurricane after it settled with the other family members.  Fisk cites claim preclusion and offensive collateral estoppel in arguing that the judgment bars Hurricane from disputing it is liable on his claim.

¶12      Neither doctrine applies here.  Claim preclusion requires, *inter alia*, identity of claims by parties or their privies based on the same cause of action.  *See In re General Adjudication of All Rights to Use Water in Gila River Sys. & Source*, 212 Ariz. 64, 69, ¶ 14 (2006).  Claims are identical when they are based on the same evidence.  *See Pettit v. Pettit*, 218 Ariz. 529, 532, 533, ¶¶ 8, 10 (App. 2008) (claim preclusion applies if the evidence needed to sustain the second action would have sustained the first).  Fisk's claims for personal injuries and for the wrongful death of his wife are not the same as her other relatives' claims for wrongful death.  *See* A.R.S. § 12-613 (2018) (in action for wrongful death, "the jury shall give such damages as it deems fair and just with reference to the injury resulting from the death to the surviving parties who may be entitled to recover").  Fisk's claims for relief were personal to himself, and required the jury to determine both his injuries and the damages, including any loss of consortium, that he sustained upon the death of his wife.  Although Fisk's claims and those of the relatives share some common elements (whether Hurricane was liable and issues concerning comparative fault), evidence of the relatives' damages would not have sufficed to prove Fisk's damages.  Therefore, claim preclusion does not apply.

¶13      Collateral estoppel (issue preclusion) requires, *inter alia*, that "the parties actually litigated the issue in the prior proceeding."  *Calpine Const. Fin. Co. v. Ariz. Dep't of Revenue*, 221 Ariz. 244, 249, ¶ 25 (App. 2009).  But the parties to the settlement did not actually litigate the issue of Hurricane's liability; the other family members settled instead by accepting Hurricane's offers of judgment.  *See 4501 Northpoint LP v. Maricopa County*, 212 Ariz. 98, 102-03, ¶¶ 24-26 (2006).

## C.      Evidentiary Issues.

¶14      Fisk argues that the superior court erroneously admitted or excluded evidence in several instances.  We review the admission or exclusion of evidence for an abuse of discretion, *State v. Gill*, 242 Ariz. 1, 3, ¶ 7 (2017) (admission); *State v. Romero*, 239 Ariz. 6, 9, ¶ 11 (2016) (exclusion), but interpret the Arizona Rules of Evidence *de novo*, *Gill*, 242 Ariz. at 3, ¶ 7.

The superior court abuses its discretion by committing an error of law. *Romero*, 239 Ariz. at 9, ¶ 11. We will not grant a new trial, however, absent both an abuse of discretion and resulting prejudice. *Hudgins v. Sw. Airlines Co.*, 221 Ariz. 472, 480, ¶ 10 (App. 2009).

### 1. Admission of expert testimony about the headlight.

**¶15** Fisk argues that the superior court erred in admitting the testimony of Hurricane's expert witness, Robert Bleyl, who examined Fisk's car and concluded that although the running lights and taillights were on at the time of the crash, the headlights were not. Bleyl reached his conclusion about the headlights based on his observations that the headlights, which were retractable, were in the down position and the filaments in the right front headlight did not show the distortion that he said would typically occur upon a severe impact near the light while the light was on.

**¶16** The superior court has broad discretion in admitting expert testimony, *see Lohmeier v. Hammer*, 214 Ariz. 57, 64, ¶ 25 (App. 2006), and we will not disturb its decision to allow expert testimony absent an abuse of discretion, *State v. Naranjo*, 234 Ariz. 233, 247, ¶ 65 (2014). Arizona Rule of Evidence ("Rule") 702, which governs the admissibility of testimony by expert witnesses, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

**¶17** "The rule 'recognizes that trial courts should serve as gatekeepers in assuring that proposed expert testimony is reliable and thus helpful to the jury's determination of facts at issue.'" *State v. Bernstein*, 237 Ariz. 226, 229, ¶ 11 (2015) (quoting Ariz. R. Evid. 702 cmt.). But "[t]he trial

court's gatekeeping function is not intended to replace the adversary system." *Bernstein*, 237 Ariz. at 229, ¶ 11 (quoting Ariz. R. Evid. 702 cmt.). "Rather, '[c]ross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Bernstein*, 237 Ariz. at 229, ¶ 11 (quoting Ariz. R. Evid. 702 cmt.).

¶18 Fisk argues the superior court erred by allowing Bleyl to testify because he was not qualified to provide an expert opinion about the headlight. As Fisk asserts, Bleyl "admitted he is not a headlight expert, but a civil engineer." Although Bleyl is a civil engineer, he testified to having other, more specific qualifications. He testified he had been performing forensic analyses of traffic accidents for nearly 40 years and wrote an article documenting his research analyzing traffic-light filaments to determine whether a particular light was on at impact. He also testified he had taken a three-week course in analyzing car headlamps and taillights, and had testified many times in state and federal courts about whether lights were on or off at the time of an accident. Indeed, he testified that the primary focus of his research has been in analyzing lamp filaments to determine whether a light was on at the time of a collision. Nowhere did Bleyl "admit[] he is not a headlight expert," as Fisk contends.

¶19 Fisk further argues that Rule 702 required Bleyl to have "scientific, technical or other specialized knowledge of the right head lamp from the subject [car] that was involved in the collision on March 9, 2012." Fisk does not cite, and we have not found, any authority suggesting that Rule 702 requires such particularized expertise. To the contrary, as long as the jury "can receive help on a particular subject from the witness[, t]he degree of qualification goes to the weight given the testimony, not its admissibility." *State v. Davolt*, 207 Ariz. 191, 210, ¶ 70 (2004) (citation omitted).

¶20 Fisk next argues the court should have excluded Bleyl's testimony because Fisk and another witness testified that the headlights were on, contrary to Bleyl's conclusion. "Expert testimony . . . is inadmissible when the facts upon which the expert bases his testimony contradict the evidence." *Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir. 1999). As Fisk concedes, however, "[e]xpert testimony 'is not inadmissible simply because it contradicts eyewitness testimony.'" *Id.* The existence of contradictory eyewitness testimony goes to the weight of an expert's testimony, not its admissibility. *See Sandretto v. Payson Healthcare Mgmt., Inc.*, 234 Ariz. 351, 359, ¶ 24 (App. 2014) ("[T]he trial court's 'gatekeeping function ought not to be confused with the jury's responsibility to separate

wheat from chaff.'") (quoting *Crowe v. Marchand*, 506 F.3d 13, 18 (1st Cir. 2007)). Nor was Bleyl's testimony inadmissible merely because the experienced police detective who investigated the crash disagreed with Bleyl's conclusions. *See* Ariz. R. Evid. 702 cmt. ("Where there is contradictory, but reliable, expert testimony, it is the province of the jury to determine the weight and credibility of the testimony."); *State ex rel. Montgomery v. Miller*, 234 Ariz. 289, 298, ¶ 20 (App. 2014).

**¶21** Fisk also suggests that Bleyl did not use proper methods to perform his investigation, citing testimony from the Glendale detective who watched Bleyl examine the lights on Fisk's car. The detective testified that Bleyl used a rock to break open the glass face of the headlight, and used only a pocket camera and pocket magnifier to examine the car's lights. The detective testified she believed that Bleyl himself made the light inoperable by pushing the bulb to the side when he opened it.

**¶22** The detective's testimony may have been probative of whether Bleyl's opinion was "the product of reliable . . . methods," *see* Ariz. R. Evid. 702(c), or whether Bleyl "reliably applied" those methods here, *see* Ariz. R. Evid. 702(d). But Fisk had the opportunity to challenge Bleyl's testimony through "[c]ross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Bernstein*, 237 Ariz. at 229, ¶ 11 (quoting Ariz. R. Evid. 702 cmt.). Moreover, Fisk did not seek a hearing before trial to challenge Bleyl's methods. Although he filed a mid-trial motion *in limine* to preclude Bleyl's testimony, that motion challenged only Bleyl's qualifications, not his methods. *See, e.g.*, *Bernstein*, 237 Ariz. at 228, ¶¶ 4-6 (superior court excluded expert testimony after pretrial hearing pursuant to Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)).

**¶23** In these circumstances, the superior court did not err by allowing the testimony.

### 2.    Admission of evidence of Fisk's settlement demand.

**¶24** Fisk argues the superior court erred in allowing evidence that he made a settlement demand to Kast. Before trial, Fisk moved under Rule 408 to exclude evidence concerning his settlement with Kast, even for impeachment. The superior court precluded use of the word "settlement" and any reference to the amount of the settlement, but ruled that it would allow evidence that Fisk had sent two demand letters to Kast. The court later explained that "[Rule] 408 excludes offers to compromise and compromises. It does not exclude demands. . . . [I]t excludes the monetary

part of the demand . . . but it does not exclude the fact that your client asked for money from the insurance company."

**¶25**  In the end, the court ruled that one letter was inadmissible, and the other letter was not offered in evidence. Nevertheless, Fisk was compelled to acknowledge on cross-examination that he had "made a demand to representatives of Ms. Kast for wrongful death." Kast likewise testified that Fisk sent her a "legal demand . . . for damages," asserting she was responsible for the accident. Hurricane's counsel referenced this testimony during closing argument, stating "[Fisk] made a demand of [Kast]," and "[Kast] got behind the wheel and took responsibility. And [Fisk] made a demand."

**¶26**  Rule 408 provides as follows:

> (a) Prohibited Uses. Evidence of the following is not admissible – on behalf of any party – either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> (1) furnishing, promising, or offering – or accepting, promising to accept, or offering to accept – a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or a statement made during compromise negotiations about the claim.
>
> (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

The purpose of the exclusion of such evidence is to promote "the public policy favoring the compromise and settlement of disputes" and to encourage parties to communicate freely. Fed. R. Evid. 408 Advisory Comm. Note; *Miller v. Kelly*, 212 Ariz. 283, 287, ¶ 12 (App. 2006).

**¶27**  A demand letter may be inadmissible if it constitutes an offer to settle a claim in exchange for payment. *See Bates v. Estes Co.*, 125 Ariz. 327, 327-28 (App. 1980). Testimony about the contents of such a demand letter likewise may be inadmissible. *See State ex rel. Miller v. Super. Ct.*, 189 Ariz. 228, 232 (App. 1997) ("Rule 408 precludes more than the 'offer' to compromise; conduct and statements made in the pursuit of a settlement

are also precluded.").  Here, Hurricane sought to use evidence of Fisk's demand to undercut any suggestion by Fisk at trial that the jury should not apportion fault to Kast, whom Hurricane had designated as a nonparty-at-fault.

¶28      The parties cite no Arizona authority concerning whether a demand for payment after an accident necessarily is an offer to compromise protected by Rule 408.  Courts in other jurisdictions, however, have concluded that preclusion does not apply to a demand consisting of nothing more than threat of litigation unless full payment is made.  *See, e.g.*, *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 827 (2d Cir. 1992) (once litigation has begun, offers made between attorneys are presumed to be within the scope of [Federal] Rule 408, but "[i]t is often difficult to determine whether an offer is made in compromising or attempting to compromise a claim." (quotation omitted)); *Atmosphere Hosp. Mgmt., LLC v. Shiba Inv., Inc.*, 158 F. Supp. 3d 837, 845 (D.S.D. 2016) (communication of "pre-lawsuit factual and legal grievances as well as . . . demands[] . . . are generally not 'compromise negotiations' within the meaning of [Federal] Rule 408"); *Commonwealth Aluminum Corp. v. Stanley Metal Ass'n*, 186 F. Supp. 2d 770, 773 (W.D. Ky. 2001) ("[O]ne-sided discussions which contain . . . settlement demands and threats of litigation are not protected."); *Kraemer v. Franklin & Marshall Coll.*, 909 F. Supp. 267, 268 (E.D. Pa. 1995) (Federal Rule 408 not applicable where "letter was not an offer to settle a claim, but a demand . . . accompanied by a threat of legal action."); *Ullmann v. Olwine, Connelly, Chase, O'Donnell & Weyher*, 123 F.R.D. 237, 242 (S.D. Ohio 1987) (Federal Rule 408 excludes evidence of a demand letter only if "compromise negotiations were in fact happening"); *Norton Healthcare, Inc. v. Deng*, 487 S.W.3d 846, 855 (Ky. 2016) (conversation intended solely to "inform[ the defendant] of the price it would have to pay for [the plaintiff] to drop his lawsuit" not protected).

¶29      We need not decide the issue, however, because Fisk cannot show that he was prejudiced by any error in allowing the jury to know of the demand.  The jury could not find Hurricane liable for serving Kast unless it concluded that Kast caused the accident.  At oral argument on appeal, Fisk acknowledged that his case against Hurricane hinged on Kast having caused the accident that injured him and killed his wife.  At trial, he argued that Kast was obviously drunk, but Hurricane continued to serve her.  And while Fisk argued in closing that all fault should be apportioned to Hurricane, he also acknowledged that the accident occurred when Kast drove drunk through the red light, and that, indeed, she had pled guilty to manslaughter in connection with the accident.

¶30        Under these circumstances, Fisk is hard-pressed to argue that he was prejudiced by the jury's knowledge that he had made a demand for payment to Kast based on her fault in the accident. Such a demand was entirely consistent with his position at trial that Kast caused the accident by running the red light. Instead, Fisk contended during oral argument on appeal that the reference during his cross-examination to his demand to Kast's "representatives" prejudiced him by inviting the jury to consider that he might have received a settlement with Kast's insurance company. But we cannot agree that the brief references quoted above impermissibly prejudiced Fisk because they introduced the notion of insurance into the case. Fisk also cites *Dunn v. Maras*, 182 Ariz. 412, 422 (App. 1995), for the proposition that evidence of a settlement may prejudice the jury. The jury here, however, was not told of any settlement that Fisk might have made with Kast.

¶31        On this record, no reversible error occurred when the court allowed the testimony that Fisk had made a demand on Kast.

### 3.    Admission of "bad acts" evidence.

¶32        Fisk argues the superior court also erred in admitting evidence of his and Lindsey's drug use, domestic violence, criminal charges, probation and confinement. He contends the evidence was irrelevant, had no proper purpose and unfairly prejudiced him by "poison[ing] the jury's view" of him and his wife. We review the admission of prior acts evidence for abuse of discretion. *State v. Mott*, 187 Ariz. 536, 545 (1997). Under Rule 404(b), "evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Such evidence, however, may "be admissible for other purposes." *Id.* To be admissible, evidence of a prior act must be relevant under Rule 402, its probative value must not be substantially outweighed by the potential for unfair prejudice under Rule 403, and it must be admitted for a proper purpose under Rule 404(b). *See id*.

¶33        The superior court did not err in admitting this evidence because it was relevant to Fisk's claimed damages for loss of consortium; it rebutted Fisk's testimony concerning the value of Lindsey's support, companionship and care. *See, e.g.*, *Quinonez v. Andersen*, 144 Ariz. 193, 198 (App. 1984) (domestic violence and other bad acts evidence admitted to rebut surviving spouse's claimed damages in wrongful death case); *Udemba v. Nicoli*, 237 F.3d 8, 14-16 (1st Cir. 2001) (past act of domestic violence admissible to show lack of damages); *Fletcher v. City of New York*, 54 F. Supp. 2d 328, 334 (S.D.N.Y. 1999) (past drug use admissible to show lack of

damages).  And the superior court mitigated any prejudice by instructing the jury to consider the evidence only for that purpose.  *See Mott*, 187 Ariz. at 545 (citing Ariz. R. Evid. 105).

### 4.    Admission of post-mortem toxicology results.

**¶34**    Fisk also maintains that the superior court erred in admitting evidence and allowing argument relating to Lindsey's post-mortem toxicology report, which showed she used methamphetamine shortly before her death.  While Fisk does not cite an exhibit by number or direct our attention to any testimony, he cites a portion of Hurricane's closing argument in which defense counsel referenced such evidence.

**¶35**    The toxicology report was relevant: It showed that Lindsey continued to abuse a dangerous drug at the time of her death, which would tend to degrade the quality of companionship, care and support she could be expected to provide to him, had she lived.  It also bore on the jury's consideration of the probable length of her life.  That the evidence showed recent drug use at the time of the collision made the evidence more probative of the expected quality of her future consortium.  The evidence therefore was relevant under Rule 402 and had a proper purpose under Rule 404(b): To prove damages for loss of consortium, as discussed above. *See, e.g., Quinonez*, 144 Ariz. at 198; *Udemba*, 237 F.3d at 14-16; *Fletcher*, 54 F. Supp. 2d at 334.

**¶36**    Furthermore, the probative value of the evidence was not "substantially outweighed by a danger of . . . unfair prejudice."  Ariz. R. Evid. 403.  In *Cobige v. City of Chicago, Ill.*, 651 F.3d 780, 784-85 (7th Cir. 2011), *as amended on denial of reh'g* (Sept. 8, 2011), a wrongful death action, the court ruled that the trial court erred in *excluding* evidence of the decedent's drug abuse, trouble with the law and incarceration.  The effect of the evidence in that case – offered to counter the "rosy" picture of the decedent painted by the plaintiff, the victim's son – was not unfairly prejudicial:

> When the law makes damages depend on matters such as the emotional tie between mother and son, the defendant is entitled to show that the decedent's character flaws undermined the quality of advice and support that she could have supplied.  This kind of effect is not "prejudice" at all – not unless we count as "prejudice" all evidence that undermines the other side's contentions.

*Id.* at 785.

¶37    The reasoning in *Cobige* is sound and applies here.   The evidence that Lindsey abused drugs may have undermined Fisk's portrayal of Lindsey and their marriage, and Hurricane was permitted to offer the evidence to rebut Fisk's claimed damages.   The evidence was not unfairly prejudicial.

### 5.    Admission of family court records.

¶38    The superior court likewise did not err by admitting family-court records showing the Fisks' marital problems, including a dissolution petition filed by Lindsey in 2010.   Fisk argues these records had "scant probative value" and risked substantial prejudice.   As explained above, however, this kind of evidence was admissible to rebut Fisk's claimed damages for loss of consortium.   *See, e.g.*, *Quinonez,* 144 Ariz. at 198; *Cobige*, 651 F.3d at 784-85; *Udemba*, 237 F.3d at 14-16; *Fletcher*, 54 F. Supp. 2d at 334.   And while Fisk argues the evidence was stale and prejudicial, he was entitled to counter it with evidence of more recent happier times.   In any event, the superior court did not abuse its discretion in allowing the evidence.[2]

### 6.    Admission of Dr. Sucher's and Dr. Petty's expert testimony.

¶39    Fisk argues the superior court erred in admitting expert testimony from Dr. Sarah Petty and Dr. Michel Sucher, asserting that it was irrelevant, lacked foundation and was highly prejudicial.   Petty, a clinical psychologist, testified about the Fisks' drug abuse and instances of domestic violence and offered her opinion that the drug abuse made the Fisks susceptible to domestic violence.   Sucher, a board-certified physician who practices addiction medicine, opined that Lindsey had a severe drug addiction and Kast was an alcoholic at the time of the collision.   Fisk argues these opinions constituted "bad acts" evidence inadmissible under Rule 404(b).

¶40    As explained above, however, evidence of the challenged acts and conditions was admissible under Rules 402, 403 and 404(b).   Evidence of domestic violence and drug abuse was probative of the value of Lindsey's consortium to Fisk, and while such evidence may have

---

[2]    Moreover, Fisk fails to provide a record cite for the admission of the evidence he challenges, which makes it impossible to review with precision the superior court's weighing of the evidence and the manner in which the court responded to any objection Fisk might have raised to the evidence.

undermined Fisk's claimed damages, "[n]ot all harmful evidence . . . is unfairly prejudicial," and this evidence was not. *Mott*, 187 Ariz. at 545-46.

**¶41** Fisk further offers no support or authority for his contention that the experts' *opinions* were inadmissible under Rule 702. Petty testified based on her review of court records, police records, Lindsey's medical records and others' testimony, including depositions of Lindsey's parents and Fisk. Sucher likewise based his testimony on a review of medical records, police records, counseling records and others' testimony. Fisk does not show how either expert's testimony lacked an adequate factual basis. *See* Ariz. R. Evid. 702(b) (expert testimony must be "based on sufficient facts or data"). Both experts testified to their qualifications, *see* Ariz. R. Evid. 702 (expert can qualify through "knowledge, skill, experience, training, or education"). Petty further testified that the materials she reviewed were those reasonably relied upon in her field, *see* Ariz. R. Evid. 702(c), (d) (reliable methods reliably applied), and Fisk raised no specific objection to the materials on which Sucher based his opinions. *See* Ariz. R. Evid. 103(a) (error in admitting evidence preserved on appeal only if the party "states the specific ground" for objection). Moreover, Fisk did not request a hearing before trial to challenge the admissibility of either expert's testimony, and he does not point to any trial objection he made that the superior court erroneously overruled. Fisk thus has not shown that the superior court abused its discretion by allowing the experts' opinions. *See Naranjo*, 234 Ariz. at 247, ¶ 65 (court's admission of expert testimony will not be overturned absent showing of abuse of discretion).

**¶42** Fisk further contends the court erred by allowing expert testimony about a drug abuser's reduced life expectancy, in the absence of evidence of a normal life expectancy. He also argues the court erred by declining to instruct the jury about normal life expectancy. A court's erroneous refusal to give a life-expectancy instruction can warrant a new trial in some circumstances. *See, e.g.*, *Willett v. Ciszek-Olson*, 170 Ariz. 230, 231 (App. 1991). But here, Fisk does not assert he asked for such an instruction, and our review of the record yields no such request. Fisk therefore has waived the issue. *See Patania v. Silverstone*, 3 Ariz. App. 424, 427 (1966).

### 7. Exclusion of bartender's DUI.

**¶43** Fisk argues that the superior court erred in granting Hurricane's motion *in limine* to exclude evidence that the bartender who served Kast (1) drank to excess, including while working at Hurricane; (2) was allowed by Hurricane to drive while impaired; and (3) was convicted

of DUI as a result. Fisk argues this evidence should have been allowed "(1) because the evidence indicated [the bartender] was an incompetent, unqualified gatekeeper of alcohol service; and (2) because it indicated a systemic failure to follow liquor-related policies."

**¶44** To the extent Fisk wanted to offer this evidence to show the bartender was incompetent and unqualified, the superior court did not err because the evidence concerned events occurring *after* Lindsey's death. For the same reason, the evidence did not bear on whether Hurricane "knew or reasonably should have known [the bartender was] untrained, [or] incompetent" when she served Kast. Meanwhile, the court reasonably could have concluded that evidence relating to the bartender's DUI presented a substantial risk of unfair prejudice or confusing the issues. *See* Ariz. R. Evid. 403.

**¶45** Nor did the court abuse its discretion in excluding the bartender's DUI for the purpose of showing Hurricane's "systemic failure to follow liquor-related policies." In his response to Hurricane's motion *in limine* on this issue, Fisk never alleged that Hurricane knew or should have known about the bartender's DUI. Without that link, the bartender's DUI was not relevant to whether Hurricane systematically failed to follow its own policies.

**¶46** Finally, Fisk argues this evidence should have been admitted under Rule 404(b)'s exception for evidence showing an absence of mistake or accident. Because Fisk did not make this argument in the superior court, we will not consider it on appeal. *See Preston v. Kindred Hosps. W., L.L.C.*, 225 Ariz. 223, 225, ¶ 4, n.2 (App. 2010), *aff'd*, 226 Ariz. 391 (2011).

### 8. Exclusion of Hurricane's prior overserving incident.

**¶47** Fisk next argues that the superior court erred by excluding evidence of a prior overserving incident at Hurricane Grill that led to a car crash. Fisk asserts the accident occurred less than a month before the date of the collision here, under substantially similar circumstances. Fisk contends the evidence was admissible to show Hurricane knew or should have known of the particular dangers of overserving, and also was admissible to impeach a defense expert who testified that Hurricane's bartender was a "well-trained server" who complied with alcohol-service standards.

**¶48** Evidence of previous similar accidents may be admissible. *See Burgbacher v. Mellor*, 112 Ariz. 481, 483 (1975). "It must be shown, however, that the previous conditions were substantially similar to the

conditions resulting in the accident at issue." *Id.* Evidence of other accidents is "usually inadmissible without a proper foundation showing some similarity between the accident under consideration and the prior event." *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 450 (1982). On appeal, unless "it is obvious what the answer of the witness will be or what the proof will be, or the relevancy and materiality of the excluded evidence is apparent," "[a] party can claim the exclusion of evidence is error only if . . . the party makes an offer of proof." *State v. Hernandez*, 232 Ariz. 313, 322, ¶ 42-43 (2013) (citation and quotation omitted) (citing Ariz. R. Evid. 103(a)(2)).

**¶49** On appeal, Fisk cites only a *question* to a defense expert about the alleged overserving incident; he made no offer of proof and the record contains no evidence of the alleged incident. We therefore have no basis on which to conclude that this evidence – if it existed – was admissible. *See Hernandez*, 232 Ariz. at 322, ¶¶ 39-40, 44 ("[T]he absence of an offer of proof renders us unable to evaluate the trial court's ruling.").

### D.  The Franchisor's Liability and Punitive Damages.

**¶50** Fisk argues the superior court also erred in granting the Franchisor judgment as a matter of law because he had presented "overwhelming evidence" that the Franchisor controlled, or had the right to control, Hurricane Grill's liquor operations and therefore could be held vicariously liable. But a party cannot be vicariously liable for the tort of a second party if the second party is not liable. *See Jamerson v. Quintero*, 233 Ariz. 389, 392, ¶ 14 (App. 2013) ("[B]ecause the agent has been adjudicated not liable, as a matter of law, the principal is not liable."). Because the jury found in favor of Hurricane Grill, and Fisk has not shown grounds to overturn that verdict, any error in dismissing the Franchisor was immaterial. Fisk argues otherwise, contending that the court's statement to the jury that the Franchisor was not at fault implied to the jury that Hurricane Grill was not at fault as well, and argues that, at a minimum, the statement impermissibly confused the jury. Fisk cites no authority for this contention, and we discern no such implication. Therefore, we presume that the jury followed its instruction in determining Hurricane Grill's liability. *See Golonka v. Gen. Motors Corp.*, 204 Ariz. 575, 583, ¶ 21 (App. 2003) (presumption exists that jury follows instructions).

**¶51** Finally, because the jury did not award Fisk any compensatory damages, we need not review any claimed error in the court's denial of Fisk's claim for punitive damages. *See Quinonez*, 144 Ariz. at 198-99 ("a party is not entitled to punitive damages in absence of a finding that this same party suffered actual damages"; if a jury properly concludes

that a plaintiff suffered no actual damages, "any error in not admitting punitive damage evidence is harmless error as to him").

## CONCLUSION

**¶52**      For the foregoing reasons, we affirm the superior court's judgment as a matter of law in favor of Hurricane AMT LLC, the jury's verdict in favor of Category 5 LLC dba Hurricane Grill and Wings, and the denial of the motion for new trial.



AMY M. WOOD • Clerk of the Court
FILED: AA